J. FREDERICK, Respondent, v. A. HAAS *et al.*, Appel-
LANTS.

RESULTING TRUST — PURCHASE OF LAND BY ONE, CONSIDERATION BY ANOTHER.
Where an estate is purchased in the name of one person and the consideration
is paid at the time by another, there is a resulting trust in favor of the latter;
but to establish such trust the evidence that the consideration was so furnished
must be clear.

TIME OF ADVANCING CONSIDERATION TO CREATE RESULTING TRUST. To establish
a resulting trust in favor of a person advancing the consideration for a pur-
chase of land in the name of another, the consideration must be shown to have
been advanced at the time the title was acquired; as the trust must be created
at the very time the title passes, and no subsequent transaction being allowed
to impress the character of a trust estate upon that which was absolute in the
purchaser at the time it was acquired.

RESULTING TRUST — ADVANCE OF CONSIDERATION IN CHATTELS. Where Wolfe
and Frederick agreed with Stowe to purchase land of him for five hundred dol-
lars, each to have an undivided half, and Wolfe accepted from the agent of
Frederick at the time a watch in lieu of one hundred and seventy-five dollars
of the purchase money, and other chattels for the purpose of selling them and
making up the balance of two hundred and fifty dollars, and took the deed of
the land in his own name, canceled a debt due him by Stowe in payment
thereof, and sold the chattels and made up the balance: *Held*, that there was
a resulting trust for one-half the land in Wolfe in favor of Frederick.

EVIDENCE TO SHOW RESULTING TRUST. To establish a resulting trust in favor of
one furnishing the consideration for land purchased in the name of another, it
is enough for the *cestui que trust* to show an agreement on the part of the
trustee to purchase, and that the consideration was furnished to him before he
acquired the title.

PRINCIPAL AND AGENT — ADVANCE BY AGENT FOR BENEFIT OF PRINCIPAL. If an
agent advance his own money or property for the benefit of his principal, and
the principal ratify such advance, the transaction becomes a loan dating from
the time of the advance, and the principal is entitled to the advantage of the
advance the same as if it had been his own money or property.

APPEAL from the District Court of the Eighth Judicial District,
White Pine County.

The complaint in this action, which was against A. Haas, B.
Wolfe, and L. Godchaux, composing the firm of A. Haas & Co.,
set out the purchase by defendants, in November, 1868, of a small
lot of land, sixteen feet front on the west side of Main Street by
seventy-five feet in depth, in Treasure City, White Pine County,
for the sum of five hundred dollars; that it had been previously

agreed that plaintiff was to furnish half the consideration money, which he did furnish, and defendants were to convey to him one-half the lot; that after the purchase defendants refused to convey to him, and afterwards in March, 1869, sold the lot for two thousand five hundred dollars; that it was then worth and might have been sold for three thousand two hundred dollars; and that defendants refused to pay plaintiff any part of the proceeds of sale, wherefore he demanded judgment against them for one thousand six hundred dollars.

The cause was tried before a jury, and the result was a verdict and findings in favor of the plaintiff against the defendants, A. Haas and B. Wolfe, for the sum of one thousand six hundred dollars. A motion for a new trial having been overruled, defendants took this appeal.

*Garber & Thornton,* for Appellants.

I.   The law governing an action of this character is well settled. Plaintiff must show affirmatively that at the time of the purchase he paid the whole or some aliquot portion of the purchase money. Both as to time and fact of the payment, the burden of proof is on him, and he must sustain it by clear and indisputable evidence. (*Pinnock* v. *Clough,* 16 Ver. 500 ; *Conner* v. *Lewis,* 16 Maine, 274.)   Taking every fact testified to by plaintiff's witness as true, he has failed to prove the essential fact, the cotemporaneous payment by him of any part of the five hundred dollars for the premises in controversy.   The most that can be claimed in any view of the testimony is, that he agreed, through his brother and agent, with Wolfe, acting for Haas & Co., verbally, that Wolfe should buy the lot for the joint benefit of plaintiff and defendant; that Wolfe did buy it from Stowe for five hundred dollars; that the five hundred dollars was paid by Haas & Co. to Stowe by canceling that amount of indebtedness then existing and due from Stowe to Haas & Co.   No money was ever paid to Stowe except by a credit to him in his debt to Haas & Co., made at the time of the purchase. The only advance pretended to have been made by plaintiff was at least a week afterwards.   Consequently a payment by plaintiff

at the time of the purchase is not shown. (See *Graves* v. *Durgan*, 6 Dana, 331.)

II.   Again, as there was no writing, the Statute of Frauds applies. If Haas & Co. had at the time of the purchase the watches or other property or funds of the plaintiff in their hands, under an oral agreement to use them in this purchase, still if as a matter of fact they did not use the funds of plaintiff but only their own in the purchase, the plaintiff cannot claim a trust in the land. (2 Spencer's Equitable Jurisdiction, 203, *et seq.* and cases cited; *Taylor* v. *Plummer*, 3 Miss. 574; Spencer's Eq. Jur. 205; 15 Vesey, 517; Levison on Trusts, 205; *Lamas* v. *Baily*, 2 Ver. 627; *Lane* v. *Bighton*, 1 Ambler, 413; 2 Story's Eq. Jur. § 1210; Dart on Vend. & Pur. 441; *Robles* v. *Clarke*, 25 Cal. 326.) Haas & Co. were under no legal obligation to invest plaintiff's money in this land. If there was any trust it was an express trust, and being in parol void of credit.

III.   The receipt of money from the watches will not raise the trust, any more than would the giving of a note to the alleged trustee for the purchase money, which note was afterwards paid. (2 Story's Eq. Juris. § 1201, *a.*)

IV.   If there was a resulting trust it resulted to M. M. Frederick and not to plaintiff. If so, plaintiff cannot maintain this action without a written assignment of the trust from his brother. (*Stafford* v. *Lick*, 13 Cal. 242; *Dupount* v. *Wertheman*, 10 Cal. 367; *Johnston* v. *Wright*, 6 Cal. 375; *Washburn* v. *Allen*, 5 Cal. 464; *Fisher* v. *Salmon*, 1 Cal. 414; *Mudgett* v. *Day*, 12 Cal. 140; *Padgett* v. *Lawrence*, 10 Paige's Ch. 170; *Batsford* v. *Burr*, 2 Johns. Ch. 414; *Shelton* v. *Shelton*, Ibid, 408; 5 Johns. Eq., N. C., 106; *Irwin* v. *Ivers*, 7 Ind., Porter, 308; *Gibson* v. *Foote*, 4 Miss. 729; *Kendall* v. *Mann*, 11 Allen, Mass., 18; *Loyed* v. *Lynch*, 28 Penn. 43; *Kissler* v. *Kissler*, 2 Watts, 323; *Robertson* v. *Robertson*, 9 Watts, 34; *Sidle* v. *Walters*, 5 Watts, 389; 2 Kent's Com. 438; *Colton* v. *Missing*, 1 Maddocks, 176; *Allen* v. *Cowan*, 28 Barbour, N. Y., 104.)

V.   Even if the watches were made a gift by M. M. Frederick

to plaintiff, and even if a subsequent acceptance were proved, it would not be sufficient, for a resulting trust cannot arise by acts subsequent to the purchase. The purchase money must have belonged to plaintiff *at the time*. There is no case where the doctrine of relation has ever been applied to resulting trusts. And it should not. It would give to the plaintiff a perilous advantage by taking his election after a rise in the value of the property.

VI. It is admitted that Wolfe had the watches; but the point is whether he had them as payment on this lot, or to sell on commission. It is certainly not shown by clear and undisputed evidence that he had them as payment. The weight of testimony on the contrary is clearly in favor of defendants. Would it not be a most dangerous doctrine to allow the title to real estate to be diverted on such a showing as plaintiff has made? He cannot invoke the principle that the Appellate Court will not interfere in case of conflicting evidence, for on authorities and principles, the very fact that the testimony is conflicting, not clear and indisputable, is fatal to his action.

*Tilford & Foster*, for Respondents.

I. The plaintiff did show by clear and indisputable evidence that at the time of the purchase he paid the whole or some aliquot portion of the purchase money. He did, by his agent, at the time the agreement was made to purchase together, pay one hundred and seventy-five dollars to the defendants as a part payment on his part of the lot, and gave them property of the value of the balance due, to be sold and applied, which was afterwards sold by them for that amount. This was before the purchase was completed; no deed had yet been executed, and until the deed was executed no purchase can be said to have been made. As a matter of fact the purchase was made by plaintiff, and Wolfe was let in afterwards, and therefore, when the agreement was made between plaintiff and defendants it was that defendants should take one-half off plaintiff's hands. In this view it would make no difference if the money had not been paid till long afterwards, or till the deed from Stowe was

executed.    The cases cited by appellants are founded on facts different from those presented here.

II.    Suppose the lot had become valueless, and Frederick had commenced suit to recover the sum of two hundred and fifty dollars, could Haas & Co. not have held that sum as a payment on that lot ?    It would have been a good defense, that when they received such sum it was to become a part payment on Stowe's debt to them. It was not intended by the parties that any of this identical money should go to Stowe, but it was paid and received as so much money on the Stowe debt, and the lot was the consideration.    In the case supposed, they would claim that it operated as a credit to Stowe at the time of the payment.    Though it is insisted that the whole of the money paid was that of Haas & Co., we think they had received our money, which amounted to the payment of Stowe's debt, and that in law it is the same as if so many twenty-dollar pieces belonging to plaintiff had been paid to Stowe.    (*Robles* v. *Clark*, 25 Cal. 327.)

III.    Was there any trust created to M. M. Frederick, and not to plaintiff?    In the cases cited on this point by appellants, the authority to perform the act was questioned by the principal. Here, the principal has accepted and ratified the acts of the agent, and is now endeavoring to compel a performance of the contract made by his agent.    The plaintiff having acquiesced in and ratified the acts of M. M. Frederick, that makes at least an implied agency, which is sufficient for our purpose.    (Story on Agency, Secs. 45, 46, and 54, and cases cited.)    The acts of the agent are the acts of the principal so' long as he recognizes them.    The most that could be said is, that there was an advance by the agent; and acting as such he had the right to make such advance, perhaps having other funds belonging to his principal in his hands.    There being no proof as to whom the watches belonged to, the presumption is no stronger that the watches belonged to the agent, than if he had paid coin that it belonged to him.

IV.    It is contended that there was a parol agreement shown by plaintiff, if anything was proven, to purchase the land in the name

of defendants, which agreement created an "express trust," and was therefore void under the Statute of Frauds. Our statute is a copy of the California statute. In *Boyles* v. *Baxter* (22 Cal. 578) that point was directly passed upon, and it was held that such agreement did not make an express trust, as distinguished from one implied by law.

By the Court, Lewis, C. J.:

There can be but little, if any, difference of opinion upon the abstract legal propositions discussed by counsel for appellants in this case. The difficulty, if any exist, is in determining whether the case at bar comes within the rules announced as the law. When an estate is purchased in the name of one person, and the consideration money is paid at the time by another, that there is a resulting trust in favor of the latter is a principle of equity jurisprudence than which none is more thoroughly settled; and the difficulty in cases of this kind does not arise from any uncertainty respecting the principle itself, but rather from the failure on the part of the *cestui que trust* to produce evidence satisfactory and sufficient to establish the fact that the consideration was in fact furnished by him. All the Courts require this to be clearly established. In this we agree with counsel; and furthermore, it must be admitted that the consideration must be shown to have been advanced at the time the title was acquired, so that the trust must be created at the very time the title passes—no subsequent transaction being allowed to impress the character of a trust estate upon that which was absolute in the purchaser at the time it was acquired. But when these facts are clearly established there can be no doubt but a trust will be raised.

Thus it only remains to determine whether the evidence brings this case within the rule. We think it does. M. M. Frederick, the plaintiff's agent, testifies that he wanted to buy the lot in question for his brother; and as he did not know the owner, he desired Wolfe, who was one of the firm of Haas & Co., to assist in finding him; this he did. When Stowe, the owner, was found, Wolfe said: "I wish to buy that lot of you." Stowe said: "I have promised it to somebody else." Wolfe replied: "I would like to get it";

and Stowe answered : " You can have it for five hundred dollars."
[Then Wolfe turned to me and said : "·I have bought it for you
for five hundred dollars."]    After leaving Stowe, Wolfe said to
Frederick that Haas & Co. would like to go into the speculation—
that Stowe owed them some money, and they would take half of it.
I told him I was buying the lots for H. S. Eisler and for my
brother, and he might take the place of Eisler in the purchase of
the lot.    Then he goes on to say " that a week after this he went
to the store of Haas & Co.,.and enquired of Wolfe if he had re-
ceived a deed of Stowe, who answered that he had not." [" I gave
him a gold watch at one hundred and seventy-five dollars, which he
agreed to and did take as a payment of that amount on the lot,
leaving a balance of seventy-five dollars to be paid for my one-half.
Then I told him to take some silver watches to the amount of sev-
enty-five dollars. He took these watches to sell. I was short of
money, and therefore did not pay him money, but gave him the
watches. I gave him the silver watches, and told him if he did not
sell them for seventy-five dollars, I would send him a check for the
amount when he executed a deed to my brother."]    Again he says :
" In March (four months after the purchase) I saw the defendant
Wolfe ; went into the store in Treasure City, and there saw Wolfe
and one Leweson. Wolfe said : " What will you take for your
interest in the Stowe lot ? " No direct answer was made to the
question. The following day it appears Wolfe positively refused to
make a deed to the plaintiff, which appears to be the first time that
his interest was denied, although Frederick and his attorney both
testify that a deed had frequently been demanded prior to that
time.

The witness Foster, who was the attorney for the agent of the
plaintiff, testified : "About the tenth day of November I met Fred-
erick in the street, in front of Haas & Co's store. He asked me to
come in the store and draw a deed for him ; he then introduced me
to Wolfe, and said to him, this is an old friend of mine and has been
my attorney. I want him to draw that deed for me for the Stowe
lot. He, Wolfe, replied that he had not yet received the deed from
Stowe." * *  " It was then agreed that as soon as Haas & Co.
got the deed from Stowe, that I was to draw the deed from Haas

& Co. to Frederick. They then commenced talking about watches. I understood them to say that Frederick owed seventy-five dollars—though I would not be certain as to the amount. He had sold one watch to Wolfe which I understood was to be a credit on the lot; and also spoke of other watches to be left with them for sale. Frederick told Wolfe that if those watches were not sold when he received the deed from Stowe, to inform him of it and he would send him a check for the balance due on the lot." He then testifies that he received several letters from Frederick desiring him to get the deed from Haas & Co., and that he demanded it; but they continued to make excuses and did not execute it. At one time when he demanded it, Wolfe said to him that he thought it better to keep the title in the name of Haas & Co., as the property was coming up, and he could sell it if an opportunity offered without waiting to get a deed from Frederick; and again, he said he would make it all right when Frederick returned. And in the month of December he testifies that he and Wolfe agreed to have some work done on the premises preparatory to fencing.

Another witness, D. M. Foster, testified that he heard Wolfe say he had bought another lot on speculation with Frederick, designating it as the Stowe lot.

One Pray also testified that Wolfe employed him to do some work on the premises in question—who spoke of it at the time as the Frederick lot. The bill for the work so done was afterwards presented to Frederick, and he paid it.

This is substantially the testimony on behalf of the plaintiff; and it must be admitted that it carries conviction with it, to the extent at least that Frederick has given a truthful history of the transaction. That he had an interest in the lot is a fact corroborated by the attorney, J. C. Foster, who relates conversations between Frederick and Wolfe respecting the matter, which are full of admissions of such interest; and also conversations between himself and Wolfe in which the admission is again made, and the frequent demand of a deed for the interest of Frederick with no denial of such interest, but rather a confession of it in the excuses given for not executing it. And again, the direct admission of Wolfe testified to by the other witness, (Foster) that the purchase was made by Frederick and him-

self, and the payment of Pray, by Frederick, for work done on it at the request of Wolfe, are facts all strongly corroborating the testimony of Frederick, and establish the truth of his evidence beyond any reasonable doubt.   All this testimony, it is true, is flatly contradicted by Wolfe.   The jury, however, found against him, and were justified in doing so upon the clear weight of evidence.   These facts must then be accepted as proven in the case : That Haas & Co. and the plaintiff agreed with Stowe to purchase the premises for five hundred dollars, each to have an undivided half; and that Wolfe accepted from the agent of the plaintiff a gold watch in lieu of one hundred and seventy-five dollars of the purchase money ; and also took and agreed to sell other watches for the purpose of making up the balance ; that this balance was realized by the sale of the watches is not disputed, but it is not shown when they were sold.   However, it is argued that the evidence does not show that the plaintiff's money or property formed any part of the consideration paid to Stowe; that the watches were not delivered until after Stowe had been paid by Haas & Co.   If this be true, clearly the plaintiff should not recover, for this is undoubtedly the essential fact to be proved—without proof of which the trust is not established. But we find nothing in the evidence to warrant the conclusion thus relied on by counsel.

True, it is shown that Stowe was indebted to Haas & Co., and that they did not intend to pay him any money for their interest ; but it is not shown that he was indebted to them in the full sum of five hundred dollars, and that they simply gave him credit for the full sum.   It cannot be presumed, without evidence, that Haas & Co. thus made themselves the creditors of Frederick without his request.   Indeed, we have been unable to find any pretense of any such thing in the evidence, nor any warrant for presuming that such was the case.   It is a fact the watches were not given to Haas & Co. until about a week after the contract of purchase with Stowe ; but it is not pretended by any of the witnesses that any payment was made, nor any credit given to Stowe on the books of Haas & Co. before the deed was executed, nor that there was any agreement to do so.   While on the other hand, it appears that the gold watch was sold to Wolfe for one hundred and seventy-five dollars,

he to accept it as so much towards the payment of the lot, and the balance was to be paid by money which might be realized from the sale of other watches. Thus the watches were given to Wolfe as payment for the lot, payment not made to Wolfe for the lot, but given to him as the money which was to be given to Stowe. It does not seem to have been claimed on the trial that they were given to reimburse Haas & Co. for payment made by them for the plaintiff.

As we understand the testimony, the gold watch was sold to Wolfe. He, instead of paying its price to Frederick, was to pay it to Stowe; while the silver watches were left with the firm to sell, whereby they expected to realize the balance of the two hundred and fifty dollars. And as it was agreed if they were not sold when Stowe made the deed, he, Frederick, would forward the money; and nothing further appearing, it must be presumed they were sold before the deed was executed. That this took place before the deed was executed is undisputed; it must then, nothing appearing to the contrary, be presumed that the consideration was paid at the time the deed was executed, and at that time the plaintiff's property or money was in the hands of Haas & Co. to be employed as a payment to Stowe for his interest in the lot. The consideration money (for we must so consider the watches) from the plaintiff being thus in the hands of the defendants at the time they acquired the title, and taken by them to be used in securing title for the plaintiff, it must be concluded that it was employed in accordance with the mutual understanding of the parties. It is certainly enough for the *cestui que trust* to show an agreement on the part of the trustee to purchase, and that the money was furnished to him before he acquired the title. In a great majority of cases, this is the only method whereby it can be proven that the consideration is furnished by the *cestui que trust*—hence, when proven, it should be considered *prima facie* sufficient, if not disproven by the trustee. We must presume, then, that the plaintiff's property or money constituted the consideration for one-half of the lot.

M. M. Frederick, who was the person engaged in the transaction, testifies that he acted as the agent of his brother, the plaintiff, in making the purchase of the lot. There is nothing in the record

Lewis v. Doron.

opposed to this testimony; it must, therefore, be accepted as an established fact. No power of attorney was necessary to authorize such act. The plaintiff ratifies it by the bringing of this action, if not before. It can make no difference, therefore, whether the watches given to Wolfe belonged to the plaintiff or his agent. If to the agent, then he must be deemed to have given them for the benefit of his principal, which could properly be done, and such being his intention the watches and the money realized from them legally belonged to the plaintiff. The case is precisely the same as if the agent had advanced his own money for the benefit of his principal, which, if he ratify, the transaction would become a loan dating from the time of the advance.

The instruction asked by defendant, that if the watches belonged to M. M. Frederick the jury should find for defendants, was therefore properly refused; for although they may have belonged to him at the time of the sale or deposit with Wolfe, the evidence makes out a loan of the proceeds of them to the plaintiff, and so even if the title to the watches were in M. M. Frederick, the plaintiff would still be entitled to recover.

The judgment of the lower Court must be affirmed.