HENRY D. PHILLIPS

*v.*

JENNIE F. PHILLIPS.

[Decided May 9th, 1913.]

1. The burden of establishing a resulting trust is on the party asserting it. He must prove not only that the consideration for the conveyance was paid by him or out of his funds, but also that the money was paid as the purchase price and not as a loan. When there is evidence from which it may be inferred that the money was advanced as a loan, the burden is on him to overcome this inference by clear and satisfactory proof.

2. A resulting trust arises by operation of law from contemporaneous circumstances which give the legal and equitable titles different directions. It must, therefore, arise at the instant the deed is taken and

the legal title is vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time.

3. After a review of the evidence—*Held*, the complainant has not sustained the burden of proof. The weight of the evidence is clearly with the defendant that the complainant advanced the purchase price as a loan.

*Messrs. Vroom, Dickinson & Scammell,* for the complainant.

*Mr. Linton Satterthwait,* for the defendant.

BACKES, V. C.

The bill is filed for the purpose of establishing a resulting trust in favor of the complainant in a farm of eighty-eight acres, situate near Trenton, in the county of Mercer, the legal title of which is in the defendant.

On March 14th, 1910, the defendant entered into the following agreement with John L. Weber:

"TRENTON, N. J., Mch. 14th, 1910.

"This is to certify that I have this fourteenth day of March, 1910, sold to Jennie F. Phillips my farm in Lawrence Township, Mercer County and State of New Jersey, containing eighty-eight acres, more or less, for three thousand dollars, subject to a mortgage of one thousand dollars, and the said Jennie F. Phillips is to pay fifteen hunderd dollars in cash and note at 3 months, for five hundred dollars, with the privilege of renewal with the payment of one hundred and twenty-five each time until the amount of five hundred dollars and interest on same is paid; this agreement to be in force by the payment of five dollars to bind this agreement until Mch. 16th, 1910, or until the deed is delivered to said Jennie F. Phillips, as per this agreement."

By deed dated March 16th, Weber and wife conveyed the premises to the defendant. The complainant paid the consideration price substantially in compliance with the terms of the contract. He claims that the defendant acted as his agent in effecting the purchase, and that because of this, and inasmuch as he had paid the purchase price, a trust resulted in his favor. On the other hand, the defendant's contention is that the purchase-money was loaned to her by the complainant and with it she bought the farm for her own use. The testimony of the parties

is in irreconcilable conflict, each firmly maintaining his and her own and denying the other's alleged status. Counsel contend that the burden of proof is upon his opponent, and because of the other's failure to sustain it, claim a favorable decree.

The burden of establishing a resulting trust is on the party asserting it. He must prove not only that the consideration for the conveyance was paid by him or out of his funds, but also that the money was paid as the purchase price and not as a loan. When there is evidence from which it may be inferred that the money was advanced as a loan, the burden is on him to overcome this inference by clear and satisfactory proof. *Cutler* v. *Tuttle, 19 N. J. Eq. (4 C. E. Gr.) 549, 560; Perry Trusts (6th ed.)* ¶ *133.*

The parties to this transaction are strangers in the sense in which that term is used in cases of this kind, and from the mere payment of the purchase price by the complainant, a trust would ordinarily be implied, were it not for circumstances which rebut such an implication.

A resulting trust arises by operation of law from contemporaneous circumstances which give the legal and equitable titles different directions. It must, therefore, arise at the instant the deed is taken and the legal title is vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time. *Krauth* v. *Thiele, 45 N. J. Eq. (18 Stew.) 407.*

By this, of course, is not meant to exclude an investigation of preceding and subsequent events, which may throw light upon the situation when the title passed.

For two years next preceding the purchase, the defendant occupied the land as a tenant, using it for pasture in connection with her homestead farm. More than a year before the conveyance she treated with the owner for its purchase and obtained a refusal at $3,000. At the beginning of the year 1910 she sought an extension of her tenancy for another year, but the owner declined a renewal, and by representing that he had another likely purchaser, persuaded the defendant to buy. The defendant had made repeated visits to the owner to obtain a better figure, but he was obdurate and she closed the bargain at his price without

consulting, and apparently against the protest of, the complainant. The defendant handed the contract to the complainant, and later on Weber, the owner, delivered the deed to him and he had it recorded. Both are in the complainant's possession. The defendant executed the $500 note and renewals mentioned in the agreement, until finally the amount was paid. At the instance of the complainant, the defendant executed two mortgages on the farm; one to secure her note of $1,100, the other to secure her bond for $1,750. Upon both the complainant realized. He redeemed the former and also the mortgage of $1,000 on the property when it was conveyed.

The parties are first cousins, and until this dispute arose were on very friendly terms. The defendant was engaged in agriculture on an extensive scale on her homestead farm, and other farms adjoining, which she rented. At the complainant's solicitation she negotiated with him the possession of her homestead farm at a yearly sum of $1,700. Thereafter, she says, upon learning that she had an option on the Weber farm, the complainant offered to provide her with the money to buy it, and after she concluded the agreement with Weber, the complainant carried out his promise of financial assistance; she aiding him in raising part of the purchase price by executing the securities already referred to. The details of transferring the title she left to the complainant, because he was her friend and she says her attorney in the matter. Her testimony upon the crux of the case is corroborated by two witnesses. Mr. Weber, after verifying the defendant's long-standing option, says that he had difficulty in getting the complainant, from whom he understood the defendant was to obtain it, to pay the purchase-money, and that upon one occasion when dunning the complainant, the latter told him he had nothing to do with the property; that it was Jennie Phillips's; that he helped her with the money and he helped her buy it, and lent her the money, and that every time he asked the complainant for the money he was met with the answer that it was Miss Phillips's money, and he was merely getting it for her. To an inquiry of a Mr. Applegate, as to whether he had bought the place, the complainant replied that Jennie Phillips was the owner; that it belonged to her.

That the complainant was not altogether altruistic in advancing the money to the defendant appears from the fact that in the course of the year he would become the defendant's debtor to the sum of $1,700 for the rental of the homestead farm.

The reason he assigned *in camera* for putting the legal title to the land in the name of the defendant, and the prelude to a diabolical plot against his wife, which has for its prototype Napoleon's outrage upon Josephine, is not calculated to inspire confidence in the complainant's testimony, nor are any of the attending circumstances which the complainant enlists in the support of his claim of a resulting trust, out of harmony with the theory of a loan.

That Weber demanded of him the purchase price is not in discord. Weber had been informed by the defendant that the complainant was to supply the means. This the complainant affirmed, and only after considerable effort was Weber able to obtain the money.

The absence of an understanding as to when the defendant was to repay the money is alluded to as favorable to the complainant's position, but this is dissipated by the facts that the complainant had then bound himself to the defendant to pay her $1,700 for one year's use of the homestead farm, and that there was a tacit arrangement between them that their mutual accounts were to be adjusted from time to time, of which the complainant gives evidence when speaking of the use of his five cows by the defendant, for which he says she was to account. The complainant's insistence that he had not arranged with the defendant for the homestead farm until after he had taken possession of part of the Weber land, is challenged by his statement that he occupied the Weber farm in the month of February and long before the purchase by the defendant from Weber, and this occupancy is consonant with the defendant's version that the use of the fields on the Weber farm was given by her to the complainant in exchange for a like acreage of the homestead farm, which the defendant then had under cultivation.

In February of 1910, during the latter period of the defendant's tenancy (the property was purchased March 14th), the complainant went into and now holds possession of the tillable

portion of the Weber farm; the defendant retaining the meadow-land. The complainant repaired the fences, cleaned up the hedge-row, fertilized the land, and did the usual other things of husbandry. These acts are pointed to by counsel as controlling factors in establishing the complainant's ownership, but to my mind they are not inconsistent with the claim of the defence. As already observed, the complainant, according to the defendant's story, had hired the homestead farm and was let into possession of part of the Weber farm while the defendant was still a tenant and before the agreement of purchase had been made, in lieu of equal acreage under cultivation, retained by the defendant, on the homestead farm. While the complainant denies that there had been any negotiations for the homestead farm, his operations upon the Weber farm are explainable only upon the theory that he had at that time in some way interested himself in the larger tract of land, for it is not reasonable that he would have undertaken the tilling of part of the small farm, which was without house or buildings, unless it was in connection with a larger enterprise.

The complainant's insinuation that he wanted to buy the Weber farm to "hitch" it on the adjoining Scudder farm, is refuted by his admission on cross-examination that at that time he had no hold on the latter.

The complainant further insists that he expended $421 in making repairs and improvements on the Weber farm, and that this evinces his ownership. It might have tended in that direction, if his story were true, but it was quite apparent at the hearing that his account making up this sum was padded. The repairs were none other than those which are customarily made by tenant-farmers.

The continued custody by the complainant of the contract of sale and the deed for the farm, in view of the financial, professional and blood relationship between the parties, raises no inference against the legal title of the defendant.

The complainant has not sustained the burden of proof. The weight of the evidence is clearly with the defence that the complainant advanced the purchase price as a loan.

The bill will be dismissed, with costs.