LAWRENCE WERNER, EXECUTOR OF THE ESTATE OF BEN PHILLIPS, DECEASED, APPELLANT, *v.* CONNIE MORMON, FIRST TITLE INSURANCE COMPANY, AND FIRST WESTERN SAVINGS AND LOAN ASSO-CIATION, RESPONDENTS.

No. 5803

December 4, 1969                    462 P.2d 42

*Boyd, Leavitt & Freedman,* of Las Vegas, for Appellant.

*John Peter Lee,* of Las Vegas, for Respondents First Title Insurance Company and First Western Savings and Loan Association.

*Albert M. Dreyer,* of Las Vegas, for Respondent Connie Mormon.

## OPINION

By the Court, THOMPSON, J.:

This action was commenced by the personal representative of the Estate of Ben Phillips, deceased, against Connie Mormon, First Title Insurance Company and First Western Savings and Loan Association, defendants. Its purpose was to recover the sum of $45,000 plus interest from Connie Mormon, and to have the court declare that the Estate of Ben Phillips enjoyed a preferred interest in certain real property to the interest therein claimed by First Title and First Western under a deed of trust thereon. After suit was commenced and issue joined, Connie Mormon was adjudicated a bankrupt. The federal court authorized the case below to proceed upon the declaratory aspect of the litigation involving the claimed interests in real property asserted by the Estate of Phillips on the the one hand, and First Title and First Western on the other. Following trial, the district court ruled that the interest, if any, of the Estate of Phillips in the real property was subordinate to

the interests of First Title as Trustee and First Western as Beneficiary of the trust deed thereon. This appeal followed. We affirm the determination of the district court.

The claim of the Estate of Phillips rests squarely upon a written, recorded agreement between Ben Phillips and Connie Mormon concerning the real property in issue. The meaning to be accorded that agreement was the issue presented to the district court, and now to us. Extrinsic evidence was not received on the point, and the district court's interpretation of the agreement stems from the document itself without the aid of parol evidence to resolve apparent ambiguities. It was the contention of the Estate of Phillips that the agreement created a resulting trust of the land for the benefit of Phillips or, at the very least, an equitable lien thereon, and since the agreement was placed of record before First Western's deed of trust, First Western was on notice of Phillips' interest and must be subordinated to it. The district court, in rejecting these contentions, found that the agreement was for a loan or gift of money by Phillips to Mormon with provision for a division of profits contingent upon the sale of the property. We are unable to conclude as a matter of law that the court erred in its interpretation of the document.

Mormon had an option to purchase improved real property for $50,000 and needed money with which to exercise her option. Phillips advanced her $45,000 for that purpose. Mormon put up $5,000, exercised her option and obtained title to the property in her name, all as provided for by the agreement. The agreement also contained the following relevant paragraphs:

"Upon completion of said sale and the title to said property hereinbefore described being conveyed to Connie Mormon, Phillips agrees that Mormon shall occupy and continue to occupy the premises at 827 South Seventh Street, Las Vegas, Nevada, for a period of three years from the date of said sale, without any demand by Phillips, or payments to be made by Mormon to Phillips for any part or portion of the $45,000.00 heretofore paid by Phillips, except, however, that Mormon promises and agrees to pay to Phillips a sum equal to six percent (6%) interest annually on the sum of $45,000.00 advanced by Phillips, said sum to be paid in semi-annual installments to Phillips, beginning on the ...... day of .................., 1960, and continuing to the ...... day of .................., 1963.

"Mormon promises and agrees to operate said premises as a childrens' nursery school and its related business and activities for a period of three years from the date of the acquisition

of said property, and in the event Mormon does not so operate said premises as a nursery school or ceases to operate said premises and nursery school, then it is agreed by and between the parties that the property shall be sold, and in the event of a sale of said property the principal sums heretofore advanced by the parties shall be returned to them in the proportions said sums have been advanced, and thereafter the parties shall share equally in any profits over and above the sum of $50,000.00 as and for the purchase price of the property.

"In the event the premises are not sold or required to be sold for a period of three years from the date of the acquisition of said property then the parties promise and agree to renegotiate the terms on which the property may be sold, and in which the disposition of funds shall be made as to all parties. Provided, however, that in any renegotiation each of the parties shall be entitled to receive the sums heretofore advanced in the proportion in which said advancements have been made.

"In the event that either of the parties desire to sell their respective interests to a third party, they shall first offer to the other party to this agreement the right to purchase said interest and the party to whom said offer of purchase of the other's interest is made shall have the right of first refusal to accept said offer of purchase of the other's interest so offered, and thereafter the party making the offer shall have the right to sell the interest offered as heretofore set out. Any offers submitted in accordance with this paragraph must be submitted in writing and the parties to whom said offer is made shall have a period of ten days within which to accept or oreject [sic] said offer, and the acceptance or rejections of said offer must also be made in writing."

1. The resulting trust contention.

If one pays all or part of the purchase price for land and the conveyance is made to another, the latter may hold upon a resulting trust for the former. Frederick v. Haas, 5 Nev. 389 (1870); Boskowitz v. Davis, 12 Nev. 446 (1877); Levy v. Ryland, 32 Nev. 460, 109 P. 905 (1910). However, this is not inevitably so, since other possibilities exist. A loan may have been intended [Fields v. Fields, 114 N.E.2d 402 (Ill. 1953); Reminger v. Joblonski, 110 N.E. 903 (Ill. 1915); Phillips v. Phillips, 86 A. 949 (N.J. 1913); Restatement (second), Trusts § 445 (1959)] in which event a resulting trust does not arise. White v. Sheldon, 4 Nev. 280, 293

(1868). And, of course, if a gift was intended, the donor obviously would not acquire an interest in the land. Before a resulting trust arises the circumstances must raise an inference that the person paying all or part of the purchase price does not intend that the person taking the property should have the beneficial interest therein. Reminger v. Joblonski, supra, Gomez v. Cecena, 101 P.2d 477 (Cal. 1940); Restatement (second), Trusts § 404 (1959).

The quoted paragraphs of the agreement before us do not reveal that intention. Indeed, the opposite appears to be the case. Phillips intended for Mormon to have the beneficial interest in the property. The grantee was specifically authorized to occupy the premises and to conduct a nursery school business thereon. There is not the slightest suggestion that Phillips was to share in either the profits or the losses of that business or that he was to have any connection with it whatsoever. Mormon's only obligation was to pay Phillips 6 percent interest annually on the $45,000 advance during the first three years of her occupancy, and thereafter, to reimburse him should the property be sold and to pay him one half of any profit over $50,000. This arrangement is incompatible with a resulting trust since Morman was intended to have a beneficial interest in the property. The district court properly characterized the agreement as one for a loan or gift of money by Phillips to Mormon with provision for a division of profits contingent upon the sale of the property.

2. The equitable lien contention.

Subordinately, the Estate of Phillips urges that if a loan of money was contemplated by the agreement Phillips, nonetheless, acquired an equitable lien upon the property to secure repayment. On this point Professor Austin Wakeman Scott has stated: "Whether one who advances the purchase price by way of loan to the grantee gets an equitable security interest in the land depends upon whether the doctrine giving an unpaid vendor an equitable lien is accepted, and whether that doctrine, if accepted, is extended so as to give an equitable lien to one who is not the vendor but who advances the purchase price. The doctrine is anomalous, and probably should not be so extended." 40 Harv.L.Rev. 669, 681 (1927). Accordingly, in the absence of an agreement that the lender is to have a security interest, he has no such lien. Aaron Frank Clothing Co. v. Deegan, 204 S.W. 471 (Tex.Civ.App. 1918); 4 Pomeroy, Equity Jurisprudence § 1235 (5th ed. 1941). The intention to create such a lien must clearly appear. Commercial Credit

Corp. v. Matthews, 77 Nev. 377, 386, 365 P.2d 303 (1961); Union Indemnity Co. v. Drumm, 57 Nev. 242, 62 P.2d 698 (1936), affirmed on rehearing 57 Nev. 252, 70 P.2d 767.

The paragraph of the agreement last quoted in this opinion gives each party the right of first refusal to purchase the "interest" of the other. This is the only paragraph of the document which seems to acknowledge that Phillips had an interest in the property, and to some extent, casts an ambiguity upon the meaning to be accorded other paragraphs. Whatever the intention, it seems clear that the "interest" referred to is not that of a beneficiary of a resulting trust for reasons already expressed. It is equally clear, we think, that the "interest" is not a security interest giving rise to an equitable lien since the context in which the term is used has no reference to the repayment by Mormon of the money advanced to her. Thus, it cannot be said that the intention to create an equitable lien to secure the repayment of the money advanced clearly appears from the document.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.