1816.

HOLRIDGE
v.
GILLESPIE.

[ * 30 ]

## *HOLRIDGE *against* T. and T. B. GILLESPIE.

If a mortgagee, executor,.trustee, tenant for life, &c., having a limited interest, gets any advantage by being in possession, or otherwise, in obtaining a new lease, he is not allowed to retain it for his own benefit, but must hold it for the mortgagor, or *cestui que trust*.

Where the plaintiff assigned the lease of a farm to secure the payment of a debt due to the defendant; and the parties, afterwards, entered into an agreement, by which the plaintiff, in consideration of a sum of money expressed, but not, in fact, paid, agreed to give up to the defendant one half of the farm, and the defendant entered into possession of the premises, and surrendered the lease to the landlord, and took a new lease for an extended term of years; it was held that the plaintiff was entitled to redeem the whole premises, and, on such redemption, to have the entire benefit of the new lease.

*Nov.*11th, 1815,
and
*Jan.* 15th, 1816.

THE plaintiff, being possessed of a lease from *B. W.* and others, of a farm of about 309 acres, (parts of lots 8, 9, and 10, in *Crosby's* manor,) dated in *November*, 1806, for eleven years, subject to an annual rent of 75 dollars, on the 26th of *May*, 1808, assigned the lease to the defendant *Thomas Gillespie*. The assignment was absolute; but the assignee, at the same time, executed a defeasance, declaring that the assignment was made to secure a debt of 74 dollars and 12 cents, due from the plaintiff to *Thomas Gillespie*, with interest. Part of the land was cultivated and improved. In *April*, 1809, the defendant *T. G.* took possession of the improved part of the farm. On the 29th of *August*, 1809, the plaintiff and defendants entered into an agreement, under seal, by which the plaintiff acknowledged that he had received of the defendants 100 dollars, as a compensation for one half of his improvements on the lot, and he gave up one half of the premises to the defendant *T. G.*; and, to secure to *T. G.* 75 dollars, with interest, together with what might afterwards become due to the defendants, the plaintiff gave up the lease to *T. G.* until the 75 dollars and interest, and moneys to become due, should be paid, *and *T. G.* engaged

[ * 31 ]

28

to give the plaintiff a good lease for half the farm for eight years from the 1st of *February*, 1808, subject to the rents, &c.

The plaintiff averred in his bill, that the 100 dollars was to be paid by the defendants to the lessors for rent; that after the first agreement he delivered *T. B. G.* produce of the farm to the amount of 300 dollars, and performed work and services to the amount of 150 dollars; that *T. G.* went into possession of part, and the defendants had received the profits for 4 years, at the rate of 180 dollars a year; and that a balance was due to him from the defendants; that the defendant *T. G.*, after the first assignment, applied to the lessors, and surrendered up the lease to them, and took a new lease in his own name, and assigned it over to *T. B. G.* The bill prayed for an injunction against an ejectment brought by the defendants, in 1814, to recover possession of part of the premises occupied by the plaintiff, &c.

The defendants admitted that no money was paid to the plaintiff, but that the 100 dollars previously paid by them for rent to the landlords, and for 28 dollars and 34 cents, paid for a debt of the plaintiff, were agreed to be the consideration of the agreement of the 29th of *August*, 1809. That the defendants had previously paid the landlords the 100 dollars, but no acquittance or receipt was given to the plaintiff for the amount. That the defendant *T. G.* had been in possession since 1809, and made improvements, which were specified; had paid the rent and taxes for the whole farm for the last three years, and that the plaintiff had paid only one third of the rent for the year 1809. That the plaintiff had never paid the 75 dollars, or interest, and that he owed the defendant *T. G.* about 175 dollars, &c.; that the defendant occupied a small house and garden, and that the ejectment was brought for the house so occupied by the defendant *T. G.*, but not for the cleared land.

*Gold*, for the plaintiff, contended, that the plaintiff was entitled to redeem the whole of the demised premises, and to have the benefit of the new lease. Where the contract commenced in a loan, and the original transaction is to create a security for money, no collateral or subsequent agreement can change the nature of the contract, or deprive the mortgagor of the right of redemption.[†] A second conveyance, which springs out of, or is connected with a prior mortgage, partakes of its redeemable quality.[‡] Though the renewal of the lease be on terms personal to the mortgagee, yet the renewed term is subject to the equity of redemption of the mortgagor of the old lease.[§]

Again; where the stipulation for redemption is contained in a distinct instrument, the Court will adhere to it strictly,

*Margin notes:*

1816.

HOLRIDGE
v.
GILLESPIE.

[*32]
*Nov.* 11, 1815.

[†] 12 *Vesey, jun.* 234. *Powel on Mort.* 19.
[‡] 1 *Vernon*, 488. 2 *Caines's Cas. in Error*, 140; *Bloodgood* v. *Zeily.*
[§] 1 *Vernon*, 84. 2 *P. Wms.* 512.

29

**1816.**

HOLRIDGE
v.
GILLESPIE.

† *Baker* v.
*Wind,* 1 *Vesey,*
160.

‡ 2 *Vesey, jun.*
84.

§ *Frear* v.
*Hardenburgh,*
5 *Johns. Rep.*
272.

[ * 33 ]

*January* 15th.

to prevent the equity of redemption from being entangled to the prejudice of the mortgagor.† And if a mortgagee has continued to treat the conveyance as a mortgage, it will be redeemable.‡

Again; nothing passed by the agreement of the 29th of *August,* 1809; for the term *improvements* imports no interest in land.§ Besides, the conduct of the defendant was unconscionable and oppressive.

*Kirkland,* contra, insisted, that there was no fraud or misrepresentation on the part of the defendant, in regard to the agreement of *August* 29, 1809. The consideration is for 100 dollars, received previous to the date. Though the agreement is not drawn with technical accuracy, yet the intention of the parties is sufficiently clear; that there should be a sale of one half, and the residue remain subject to redemption, on payment of 75 dollars, and the other responsibilities of the defendants. By the word "improvements," the land was evidently intended.

The authorities cited by the plaintiff's counsel are not denied; but the law which they are intended to support *is not applicable to the present case. The consideration was not a loan, but a debt; and the second conveyance did not grow out of the first, nor is there any stipulation for a redemption; nor is there any evidence that the parties treated the part sold as if mortgaged. The acts or declarations of the defendants are to be understood in reference to that part only of the land to which the plaintiff was entitled by the contract; and the plaintiff's own acts support this construction.

The case of *Freer* v. *Hardenbergh* was that of a contract to pay for labor in making improvements on land, not for the sale of improvements.

THE CHANCELLOR. The bill filed by the plaintiff is in the nature of a bill to redeem, and the plaintiff is entitled to redeem *the whole* of the premises contained in the lease, and to have the *entire* advantage of the new lease, on such redemption. The renewed lease enures for the benefit of the mortgagor. According to the cases of *Manlove* v. *Bale,* and of *Rakestraw* v. *Brewer,* (2 *Vern.* 84. 2 *P. Wms.* 511.) the additional term comes from the same old root, and is subject to the same equity of redemption, otherwise hardship and oppression might be practised upon the mortgagor. It is analogous, in principle, to the case of a trustee holding a lease for the benefit of the *cestui que trust.* Courts of equity have said, that if he makes use of the influence which his situation enables him to exercise, to get

30

a new lease, he shall hold it for the benefit of the *cestui que trust.* (1 *Dow.* 269. 1 *Ch. Cas.* 191. 1 *Bro. Ch. Cas.* 198.) So, if a guardian takes a renewed lease for lives, the trust follows the actual interest of the infant, and goes to his heirs, or executor, as the case may be. (18 *Vesey,* 274.) Indeed, it is a general principle, pervading the cases, that if a mortgagee, executor, trustee, tenant for life, &c., who have a limited interest, gets an advantage by being in possession, "or behind the back" of *the party interested in the subject, or by some contrivance in fraud, he shall not retain the same for his own benefit, but hold it in trust. (Lord *Manners,* in 1 *Ball & Beatty,* 46, 47. 2 *Ball & Beatty,* 290. 298.) The doctrine has been uniform from the decision of Lord Keeper *Bridgman,* above referred to, in 1 *Ch. Cas.* 191., down to the most recent decisions. Nor do I think that the agreement of *August,* 1809, ought to form an obstacle to the redemption of the whole. That agreement bears the mark of undue influence growing out of the first assignment; and contracts of that kind, made with the mortgagor, to lessen or embarrass the right of redemption, are regarded with jealousy, as they are very apt to take their rise in unconscientious advantages assumed over the necessities of the mortgagor. (1 *Vern.* 8. 2 *Vern.* 520. 2 *Atk.* 495. 2 *Ball & Beatty,* 278.) The general principle is, "once a mortgage, always a mortgage;" and though, no doubt, the equity of redemption may be released upon fair terms, yet the fairness and value must distinctly appear. In this case, there was no satisfactory consideration for an abandonment by the plaintiff of one half of his farm. The agreement was false on its face, for the consideration was not paid. A payment of the annual rent to the landlord, was no compensation to the plaintiff for half of his farm; and if we can credit the subsequent declarations of the defendants, they regarded the *whole* farm as still subject to redemption. But without placing reliance on sayings of this kind, the paper itself, accompanied with the admission that the consideration was never paid to the plaintiff, is enough to justify me in not regarding that agreement as a valid obstacle to the original right of redemption.

I shall, therefore, direct a reference to a master to take and state an account between the parties, in which the plaintiff is to be charged with the 74 dollars and 12 cents, mentioned in the original defeasance, with interest from that time, and is, likewise, to be charged with all sums of money justly due to the defendants for goods sold, or advances *by them, or either of them, made to and for his use, and on his account; and that the plaintiff is to be credited with all payments made, or articles of produce delivered,

1816.

HOLRIDGE
v.
GILLESPIE.

[ * 34 ]

[ * 35 ]

1816.

HOLRIDGE
v.
GILLESPIE.

or work, labor, and services, rendered to the defendants, or either of them; and that the defendants are to be charged with the net yearly value of the premises possessed by them, or either of them, during the time of their possession, after deducting the rent and taxes accruing and paid during that period; and that the pleadings and proofs taken in the cause (the deposition of *John Connolly*, (*a*) excepted,) be received as evidence before the master, and that the question of costs, and all other questions, be reserved, until the coming in of the report.

Decree accordingly.

(*a*) An objection was made to his deposition being read, on the ground, that having been convicted of a statute perjury, though pardoned by the governor, his competency as a witness was not restored; (2 *Salk*. 689. *Peake's Evi*. 127. *Phillips's Law of Evi*. 28 ;) the statute having made the total disability to become a witness, a part of the punishment until the conviction is reversed. (1 *N. R. L.* 171. sess. 24. ch. 74. s. 1.)