Judge Ewing
delivered the Opinion of the Court.
Two patents issued, in 1815, to Rountree, Sneed and Atherton' — one for three hundred and fifty acres, the other for six hundred and fifty acres, founded on surveys made, in January, 1815, in the name of John May’s heirs, and assigned by them to the patentees, the 2nd February, 1815; which surveys were founded on a treasury warrant entry, in the name of John May, bearing date the 11th November, 1783»
Rountree conveyed his interest in the land to Craddock and Allen; who, in conjunction with Rountree and Sneed’s heirs, filed their bill against Atherton, for partition, and an account of the profits.
Atherton filed his answer, resisting the prayer of the bill, upon the alleged ground that, as to a part of the land, he had been in possession for many years before the date of the two grants, claiming title under a claim in the name of Joseph Barnett, which was superior to the claim of the complainants. And as to the residue of the land embraced in the two patents, he had purchased out adversary claims, of superior dignity, derived under Barnett’s entry; and exhibits his titles.
Upon the hearing, the Circuit Court dismissed the complainants’ bill; and they have appealed to this Court.
It appears that a survey was executed on the 19th of January, 1796, in the name of Joseph Barnett, for twelve hundred and thirty one acres of land, founded on three several entries — one for one thousand acres, made in February 1783, and two others in addition, and adjoining, made in a short time thereafter.
*277 That one Osbum purchased two hundred acress of the land embraced in Barnett’s survey, and sold the same to Atherton; who took possession and settled on the same as early as 1796, and has remained in possession ever since, claiming under Barnett’s claim.
That three hundred and fifty acres out of said survey was sold and conveyed by Barnett, to one May and Hambleton, in 1795. That May and Hambleton sold to Percifull, in 1797, and Hambleton and the executor of May conveyed to him, in 1798. Percifull, in 1801, sold, and executed his bond, to one Lee, to convey to him one hundred acres, part of said three hundred and fifty acres. Lee assigned the bond to Bray, who sold to Atherton, in 1807. And said hundred acres has been continually possessed, ever since Percifull’s purchase, by the several persons claiming under Barnett.
After the emanation of the two grants to Sneed, Atherton and Rountree, Atherton brought an action of covenant against Percifull, on his bond for failing to convey the one hundred acres, and recovered judgment in damages; whereupon, Percifull filed his bill against Atherton, setting up the superiority of his title to the land under the claim of Barnett, and upon the hearing a decree was rendered ordering Atherton to surrender up the possession of the one hundred acres to Percifull, and release all claim to him for the same, and pay him rents. Afterwards, the decree seems to have been settled between the parties, and a conveyance was made by Percifull to Atherton, for the land, and he was never in fact evicted from the same. It seems from the record in that case, as well as from the proofs and exhibits in the record now before us, that Barnett died shortly after his survey was made, and that no grant had issued thereon, nor did any issue until 1817; and that after its emanation, his heirs conveyed the three hundred and fifty acres to»Percifull, which he had bought from Hambleton and May, who claimed the same under the deed of Barnett. That Percifull conveyed two hundred and fifty acres, the residue of the three hundred and fifty acres', to Price, who conveyed the same to Carter, who conveyed to Hill, who sold and *278 conveyed to Atherton, by deed bearing date the 21st of June, 1827, for the consideration of nine hundred dollars expressed in the deed. Barnett’s heirs conveyed to Atherton all the residue of the twelve hundred and thirty one acre survey, except the three hundred and fifty acres conveyed to Percifull, by deed bearing date in April, 1826. So that Atherton now sets up claim to all the land embraced in Barnett’s patent.
The principle, that a purchase of an adverse claim, by one joint tenant in possession, shall inure to the benefit of all the co-tenants cannot apply to a purchase made before the joint tenancy commenced.
It was agreed by the’ counsel below that the whole record in the case of Percifull ,_vs. Atherton should be read as evidence in this case, except Atherton’s evidences of title.
The two entries of Barnett — one for one thousand, the other for one hundred and thirty acres, are unquestionably good, and are, in equity, paramount or superior to the titles derived under the patents to Sneed, Rountree and Atherton; and the decree of the Circuit Court, in the case of Percifull against Atherton, was correct in so determining. The third entry referred to is not exhibited in the record.
If those two entries be laid down properly, they will cover all the two hundred acres, on which Atherton settled, and also the three hundred acres claimed by Percifull, under Barnett’s sale to May and Hambleton. And will also cover the whole three hundred and fifty acre tract patented to Sneed, &c. And. probably a good portion of the six hundred and fifty acre tract patented to them. But the precise extent of the interference with the latter claim, we are not able to determine, as it is not exhibited by any connected survey in the record.
It is a well established principle of equity, repeatedly recognized by this Court that a tenant in common, joint-tenant or parcener, being in possession, will not be permitted to purchase up an adversary claim, and oppose it to the title of his co-tenant, or hold under it, in opposition to their joint claim; but such purchase if made will inure in equity to the joint benefit of each, upon the equitable terms of an equal contribution by each, in the costs of purchase. This principle grows out of the privity between them, and inculcates fidelity apd good *279 faith. Venable vs. Beauchamp, 3 Dana, 324; 5 Johns. Ch. Rep. 407; 4 Mon. 298; 2 Johns. Ch. Rep. 33-4.
A party in possession of land claiming a title from the Commonwealth,took, jointly with two others, an assignment of a survey of an inferior claim covering the same and other land, upon which a patent issued to the three — it appearing, not that he intended to abandon his prior title, or hold it also jointly with his co tenants, but rather to secure his possession by holding both titles: held that his co tenants were not entitled to a partition of so much of the land within the patent as was covered by his superior claim.
But this principle can only be made to apply to purchases made after the joint tenancy or relationship exists between them. Until then, it cannot be construed to be a breach of fidelity or good faith to purchase, as the privity has not commenced.
In relation, therefore, to the two hundred acres claimed and possessed by Atherton under Barnett’s title, and the one hundred acres claimed and possessed under t'he same title through Percifull, he stands upon different ground from that occupied by him in relation to the residue of the land purchased. As to those two parcels, he cannot be construed to have purchased with a view to the joint benefit of himself and co-tenants, or for the protection of his and their joint title. Nor can he be chargeable with an infraction of good faith, or a breach of fidelity in the acquisition of those parcels, such as would impose upon him the equitable duty to yield up these purchases for the joint benefit of all, upon the terms of an equitable contribution: as the relationship of co-tenant did not rest upon him at that time. Unless, therefore, it can be inferred from his acceptance of the joint patents with Sneed and Rountree, that he intended to abandon his prior claim, or merge it in the new title, he ought not to be required to do so. There is nothing in the' record that will lead to the conclusion that he had any such intention. But the contrary, we think, may be reasonably inferred from the facts exhibited. -
He was, and had been, for many years in the occupancy of the land, and had made valuable improvements upon it. He held a claim upon Barnett’s heirs and on Percifull for a title. It was suddenly discovered that a patent had never issued to Barnett or his heirs. His home and fire side were endangered, and as a means of securing them, and rendering assurance doubly sure, he might well agree to shelter them with an additional title, without abandoning the title under which he acquired and held the possession. It cannot be presumed that he intended to .surrender up any part of his possession, or improvements, to his co-tenants, or to endanger them *280 by his union in the new titles; but rather, that he intended to strengthen and secure them, by holding on to both titles.
Where, in such case, the joint-tenant in possession prior to the joint-tenancy holding a bond for a conveyance of part of the land by the owner of tho superior title, had, after the emanation of the patent to the joint-tenants, brought his action and recovered damages on the bond, and the def’t at law had after-wards obtained a decree, to which the other tenants were not parties, against him for a surrender of the land,upon which he purchased it and remained in possession, held that he might rightfully make the purchase for his own exclusive benefit.
If Barnett’s title proved the best, he would be protected under it, and if it failed, and the title to Sneed, Rountree and himself proved paramount and superior, he would, by means of the interest, which he held in them, be able to secure his home and possession.
The case is different from the case of Jones vs. Jones, in 1 Call, 403, to which we have been referred by the counsel. There, the father and two sons take out an inclusive joint patent founded upon their former claims, and were decided to be joint tenants. But the decision goes upon the evidence of intention of the parties to-become so, deducible from the facts of the case. Here, the titles are independent and distinct, and deducible from different sources, and without grounds for presuming an intention to become joint tenants of both claims.
Besides: as to the one hundi'ed acres, after a tedious law suit, and vigoroús defence on the part of Atherton, a decree was rendered against him for it, and he was ordered to release, and after he could no longer defend his possession successfully, he purchased out the claim.— And it has been repeatedly determined by this Court that, in the case of a tenant, (between whom and his landlord, an obligation of fidelity and good faith subsists, of equal force to that which subsists between co-tenants,) that, after judgment of eviction, he need not wait to be turned out, but may purchase out, and take shelter under, an adversary claim. In like manner, after the decree against Atherton, it was competent for him to purchase out, and take shelter under, the adversary claim- ■
It matters not whether his co-tenants were, or were not, parlies to the suit. If his possession was theirs also, it was their duty to defend it; and when they failed to do so, and it was lost, after a faithful defence on I his part, he had a right to secure himself by purchasing, I and taking shelter under, the opposing claim. |
As, therefore, Barnett’s claim, at least to the extent of the three hundred acres, is the best, and as Sneed and Rountree have no joint interest in it, and as none *281 can be implied in their favor, they, or Allen and Rountree, have no right to a partition in that part of the land.
The right of joint tenants to a participation in the benefit of a superior claim purchased by one of them in possession, rests upon their contributing their ratable proportion* of its cost.
A partition between joint tenants of land which. one of them has occupied, should if practicable, be so made as to give him the part he has improved, without regarding, in the division, its increased value by reason of the improvements: if this cannot be done, he should be paid by them for his amelioration of so much of the land as falls within their respective shares, and also interest on the amount they owe him for advances in buying in an adverse claim, deducting therefrom the profits of the land in their shares which he occupied.
But in relation to the residue of the land, embraced in their joint patents, a different principle applies. Atherton, after the privity of joint-tenancy had commenced, and while it was subsisting, purchased up the adversary claims. His purchases will inure to the benefit of himself and his co-tenants, upon the terms of a ratable contribution to him, by them, for all sums fairly and in good faith expended in their acquisition, and in endeavoring to give security to his or their joint title. That is, that Sneed and Rountree each, or those claiming under either of them, shall contribute and pay to Atherton, one third of the amount expended by him in acquiring or extinguishing Barnett’s claim, or any other outstanding incumbrance, so far as the same conflicts with their joint patents, excluding the three hundred acres secured to him in the foregoing part of this opinion; for which, if he paid any thing, he is entitled to no contribution.
The partition should be so made, if it can be done with equitable propriety, as to allot to Atherton that portion of the land which he has improved, excluding, in the computation, the additional value given to it by the improvement. If this cannot be done, then he should be paid for the ameliorations of the land which may fall to them. And if he has had the .use of the land which may be allotted to them, and the profits shall equal the interest upon the proportion of the amount which they may be found indebted to him, they shall not pay interest, but the rents and interest should be set-off against each other, as equivalents. But, If the rents upon the part allotted to them, shall not equal the interest, then they shall pay the excess of interest, and if there be no rents on that part, they shall pay the whole interest. It is difficult to give more specific directions, as the improvements are not laid down, or other facts exhibited which will enable us to do so, without danger of doing injustice to the parties. Suffice it to say that, upon an exhibition of all of the facts, as to the amounts expended in the acquisition of any of the adversary titles, or in the fair endeavor to do so, as well as to the *282 improvements, rents and interest, equal justice shall be done as near as may be, according to the principles now settled.
We have not thought it necessary to say any thing about the authentication of the deed of Barnett’s heirs, or the proof of their heirship, as, if there be any difficulty upon that score, it would be proper for the Court to give time to prove its due execution, or other facts sustaining its authenticity.
The conveyance by Rountree to Atherton, and re-conveyance by the latter to the former, can be regarded by this Court, as having no other effect than to re-invest Rountree, with the title which he before held.
It is, therefore, the opinion of the Court that the decree of the Circuit Court be reversed, and cause remanded that a commissioner or commissioners may be appointed, to hear proof, and ascertain and settle the amounts paid out, and, other facts essential to a final disposition of the case; ahd that a decree be rendered, not inconsistent with the principles in this opinion settled; and the appellants are entitled to their costs in ■this Court.