*451 By the Court,
Leonard, J.:
On the twentieth day of August, 1872, and for some time prior thereto, defendant Davis and one George Gillson were partners in the ownership of timber lands, flumes, sawmills, etc., and in the wood and lumber business in this state. At the same time, defendant Spooner and one John A. Lockie were partners in the ownership of the same kind of property and business. These two firms united and formed another partnership, and carried on their business under the firm name of Spooner, Lockie & Co., Spooner and Lockie owning one undivided half, and Davis and Gill-son the other half of all the property of the last-mentioned firm. The firm of Spooner, Lockie & Co. owned other lands in the vicinity of the lands described in plaintiff’s complaint, and were desirous of obtaining more. The lands described in the pleadings in this action were timber and grazing lands; but were chiefly valuable as timber lands. Prior to the twentieth day of August, 1872, they were claimed by one Harvey, who had a portion of them fenced, and a part was occupied by his tenant as a milk ranch. There was a milk-house and other improvements upon the land owned by Harvey. Harvey’s title was possessory only, and the legal title was in the State of California, the land being situate in the county of El Dorado. On the date last stated, Harvey conveyed by a grant, bargain and sale deed, duly acknowledged, all the lands described in plaintiff’s complaint to George T. Davis, Michael E. Spooner, John A. Lockie, George Gillson and T. B. Eowland. It was stipulated in the deed by the grantees that the interest of Davis & Gillson in said lands was an undivided five-twelfths, Spooner & Lockie five - twelfths, and Eowland two - twelfths. The consideration stated in the deed and actually paid was one thousand five hundred dollars; seven hundred and fifty dollars were paid at the date of the deed, of which sum Eowland paid one hundred and twenty-five dollars, and the other grantees paid in proportion to their interests. The further sum of three hundred dollars was paid from rent money due *452 from Harvey’s tenant which belonged to the grantees. The balance, four hundred and fifty dollars, was paid originally, by Davis & Gillson, one-half of which was subsequently repaid by Spooner & Lockie. About the first of September following Harvey’s conveyance, Gillson went to San Francisco for the purpose of purchasing scrip to lay upon this land to the end that the legal title might be secured. When he started he did not know, nor did any of the parties know, that he could obtain any scrip, or how much it would cost. On arriving at San Francisco, he obtained through Mr. J. W. Shanklin, an attorney-at-law, scrip sufficient in quantity to cover a large portion of the Harvey tract, and subsequently an additional amount' was purchased. The scrip cost at the rate of three dollars and fifty cents per acre. It was necessary to take the scrip in the name of a resident of the State of California, and defendant John E. Freeman, having been selected, took the scrip in his own name. The scrip, in a word, was purchased by Shanklin in the direct employment of Gillson, and was taken in the name of Freeman, who paid the money of Davis & Gillson therefor. Neither Shanklin nor Freeman had any beneficial interest in the scrip or the land secured thereby. After Gillson’s return to Carson, Spooner & Lockie were charged with one-half of the money paid out in obtaining the scrip, and Davis & Gillson the other half. The balance of four hundred and fifty dollars paid Harvey was charged in the same manner. Gillson, while testifying, stated his reasons for so entering these charges, which need not be repeated at this time.
Sometime in September following the purchase of the scrip, legal proceedings were had in Sacramento to remove certain jumpers from the land. Gillson, Lockie and Rowland were in attendance. Rowland borrowed money of Gillson to pay his expenses, in part, which was charged to him on the books of Davis & Gillson, and was subsequently repaid by Rowland at the request of Davis. Other expenses of the trials, for witnesses, fees, etc., were charged equally to Davis & Gillson, and Spooner & Lockie. No other charge in relation to the lands was made against *453 BiOwlancl upon the books of Davis & Gillson, but he was not aware of the way the books were kept or the charges made. The title from the State of California was taken in the name of Freeman, where it remained until the property was sold to the Carson and Tahoe Lumber and Flume Company, in June or July, 1874, for the sum of eight dollars and sixty cents per acre, aggregating the sum of twenty thousand six hundred and forty dollars. Prior to the sale last mentioned, Gillson sold his interest in tbe firm of Davis & Gillson to defendant Davis, and Lockie sold bis interest in tbe firm of Spooner and Lockie, including tbe interest in the firm of Spooner, Lockie & Co., to defendants Spooner and Patón, an undivided one-half to each, Patou agreeing to pay bis proportion of tbe liabilities in place of Lockie.
This action was brought by plaintiff, tbe assignee of Rowland's interest, to recover one-sixth of tbe proceeds of tbe salo to tbe C.and T. L. and F. Co. Defendants did not deny receiving tbe proceeds, but they did deny every allegation of plaintiff’s complaint tending to show that Rowland or plaintiff bad any rights or interests in the lands in question, or tbe proceeds of their sale. They admitted, by failing to deny, that Lockie sold bis interest in tbe lands described in the complaint to Spooner and Patón, and Gillson his interest to Davis, but denied that either Spooner, Patón or Davis purchased with knowledge of tbe facts alleged in tbe complaint, or with tbe knowledge that Rowland bad any rights in tbe premises. They admitted tbe assignment to plaintiff from Rowland, as well as plaintiff’s demand of bis proportion of tbe proceeds of tbe sale to tbe C. and T. L. and F. Co., and defendant’s refusal to pay him any portion thereof. It was admitted that defendants Davis, Spooner and Patón procured defendant Freeman to convey to tbe C. and T. L. and F. Co. All other material allegations of tbe complaint were denied. Tbe cause was tried by tbe court without a jury, and tbe findings, which are in substantial accord with the material allegations of the complaint, are as follows:
“1. That this cause was commenced in this court by the *454 filing of the complaint, and the issuance of a summons thereon, on the second day of March, A. D. 1875. "" * *
2. That on or about the twentieth day of August, 1872, said defendants, Davis and Spooner, together with one Thomas Rowland, one Jolm A. Loclde and one George Gill-son, agreed verbally together to purchase and acquire from one C. W. Harvey, the possessory title to, and possession of, and from whomever and by whatever lawful means the title in fee to the same could be acquired, to acquire the title in fee of and to the lands mentioned and described in the complaint herein.
3. That afterward, and in pursuance of said agreement, and for the purpose of acquiring possession of, and title to said lands, said Davis, Spooner, Lockie, Gillson and Rowland, took and received a grant, bargain and sale deed of conveyance from said C. W. Harvey of said lands, and received possession of the same from said Harvey, said deed Exhibit “H;” that by the terms of said deed said Rowland purchased and owned two-twelfths of said land.
4. That said purchasers agreed with said Harvey to pay him one thousand five hundred dollars for said conveyance and the possession of said lands; that said purchasers paid him seven hundred and fifty dollars of said purchase money at the date of delivery of said deed. And the court finds that of said seven hundred and fifty dollars so paid Harvey, said Rowland contributed and paid at the time, of his own funds, one hundred and twenty-five dollars; that of the balance of said purchase money, then due said Harvey, seven hundred and fifty dollars, three hundred dollars were afterward paid him of rental due said purchasers for said lands, which was collected and retained by said Harvey by authority of said purchasers; that the remainder of said purchase money was advanced by said Gillson, of the moneys of said Davis & Gillson, for the common benefit of said purchasers.
5. That in further pursuance of said agreement between said purchasers, said Gillson, about August or September, 1872, visited San Francisco, California, for the purpose of obtaining title to said lands for said purchasers; that for *455 that purpose Mr. Gillson purchased land scrip and warrants, and located the same upon said lands for said purchasers, whereby they acquired title to the same, some of which titles, if not all, were inchoate at the time of the sale of said lands hereinafter mentioned.
6. That in the purchase and pay for said land scrip and •warrants, and the expense attending the location of the same, said Gillson used the credits and advanced moneys belonging to a copartnership composed of said Davis and Gillson as a loan to said purchasers.
7. That in order to locate said land scrip and warrants upon said lands, it was necessary to do so in the name of a citizen of the State of California, where the lands were situated, and for this purpose the name of said Freeman was used as a citizen of said state, without said Freeman then having any real interest in said lands.
8. That in purchasing said scrip and warrants, and in locating the same on said lands, said Gillson always acted for himself as a party to said agreement, and in behalf of his associates therein as their agent.
9. That said Rowland was the first of said purchasers that knew of said lands, their situation, value, etc., and first suggested their purchase to his said associates, and was the first to suggest the purchase and employment of land scrip and warrants to perfect their title to said lands.
10. That after said land scrip and warrants had been purchased, said purchasers in attempting to locate the same on said lands had some litigation with other parties claiming the same, and said Rowland, at his own expense, attended upon said litigation in the interest of said purchasers for that purpose, going from his residence in Lake Yalley, California, to Sacramento, California, a very long and expensive trip.
11. That said Rowland afterward assisted in making the surveys necessary in making said locations as a party having an interest therein, at his own cost and expense.
12. That afterward, and before the sale of said lands hereafter mentioned, said Freeman and said Patón, with a full knowledge of all the facts hereinbefore found, acquired *456 certain rights and interests in and to said lands, and in and to said land scrip and warrants, from said Davis, Grillson, Spooner and Lockie.
13. That afterward and before the sale of said lands hereinafter mentioned said Davis, Spooner, Freeman and Patón, with a full and particular knowledge of all the foregoing facts, purchased and acquired amongst them the full and entire interests of said Gillson and Lockie in and to all said lands and said land scrip and warrants.
14. That one of the terms and conditions of the agreement between said purchasers mentioned in the third finding herein, was that said Howland should have one-sixth interest in said enterprise and purchase and in said lands, after title to the same was obtained in fee.
15. That the lands so purchased and always herein meant and (referred to, amount to two thousand four hundred acres, as described in said complaint.
16. That the reasonable worth and value of said lands, at the time of the sale thereof, hereinafter mentioned, was eight dollars and sixty cents per acre in gold coin.
17. That afterward, before the beginning of this action, and on or about the fifteenth day of June, 1874, said Bow-land sold and conveyed to said plaintiff, by name and style of Frank Bosko, all his right, title, interest and estate in and to said lands.
18. That afterward, and before the commencement of this action, to wit: on or about the-day of August, 1874, said defendants sold and conveyed said lands and said land scrip and. warrants located upon the same, together with other lands, to the Carson and Tahoe Lumber and Fluming Company for sixty thousand dollars gold coin of the United States, and had and received from said Carson and Tahoe Lumber and Fluming Company said sum of sixty thousand dollars gold coin of the United States therefor.
19. That the amount which said defendants received for said lands, and the land scrip and warrants located upon the same, from said Carson and Tahoe Lumber and Fluming Company, was twenty thousand six hundred and forty *457 dollars, being at the rate of eight dollars and sixty cents per acre for said two thousand four hundred acres.
20. That said lands, and the said land scrip and warrants located upon and representing the same, were, at the date of said sale thereof by said defendants, of the full and reasonable value of eight dollars and sixty cents, gold coin of the United States, per acre (per acre of land and per acre expressed in land scrip and warrants).
21. That on or about the-day of June, 1874, said Thomas Rowland sold and conveyed to said plaintiff all his right, title and interest in deed to said lands, and said plaintiff owned and possessed the same at the time of the conveyance thereof, and the transfer of said land scrip and warrants by said defendants to C. and T. L. and F. Co. as aforesaid.
22. That subsequent to said sale, transfer and convej'ance of said lands, land scrip and warrants by said defendants as aforesaid, said defendants submitted to said plaintiff, as the successor in interest of said Rowland, a statement of account between said plaintiff and said defendants, arising out of said purchase and sale of said land, and at the same time tendered to said plaintiff the sum showed as balance due said plaintiff by said account, to wit: seven hundred and thirty-three dollars and twelve cents, and at the time upon said plaintiff’s refusal to accept said tender, stated to said plaintiff that said money would be deposited in a bank to the credit of said plaintiff; that defendant subsequently tendered the plaintiff a further and additional sum, to wit: one thousand dollars gold coin of the United States, in satisfaction of his demand set up in this action.
23. That said defendants received all of said money from said O. and T. L. and F. Co., in July and August, 1874; .and that said defendants have never paid said plaintiff any part of said money.
24. That in pursuance of said agreement, said purchasers purchased two thousand four hundred acres of land scrip and warrants at three dollars and fifty cents per acre, which, with other outlays, amount to eleven thousand and fifty-two dollars, including interest.
*458 25. That account Exhibit “B” filed in this cause, shows all the outlays in purchasing said lands, land scrip and •warrants, and the attendant expenses, except the price of four hundred acres of scrip at three dollars and fifty cents per acre, hereby allowed in addition thereto.
As conclusions of law from the above facts, said court now finds as follows:
1. That said plaintiff is entitled to have and recover of and from the said defendants one-sixtli of the remainder of said sum of twenty thousand six hundred and forty dollars in gold coin, after deducting therefrom the outlays in procuring said lands and the expenses attendant upon said joint enterprise, together with interest on said outlays and expenses at the rate of ten per cent, per annum from November 1, 1872, to September 1, 1874, allowing as the purchase price of all of said scrip and land warrants, three dollars and fifty cents per acre for the whole of said two thousand four hundred acres, with interest on said one-sixth remainder from the first day of September, 1874, to date and until paid, at the rate of ten per cent, per annum, together with the sums of one hundred and twenty-five dollars, paid by Rowland at the time of said purchase, and the sum of fifty dollars, the said Rowland’s one-sixth of said rent, and the sum of sixty dollars, expenses incurred and paid by said Rowland at the city of Sacramento, in and about procuring said lands, with interest on said three last-mentioned sums, to wit: two hundred and thirty-five dollars from the first day of November, 1872, to date and until paid.
2. That said plaintiff is entitled to have judgment against defendants for the sum of one thousand seven hundred and fifteen dollars and fifty-five cents, in gold coin of the United States, together Avith his costs of suit.
Defendants moved for a neAv trial upon the grounds of errors in law occurring at the trial, insufficiency of evidence to support the findings and judgment, and that the findings, and decision were contrary to the evidence, and against law. The motion for a new trial was denied, and this appeal is taken from the order denying such motion, and from *459 the judgment. At tlie trial plaintiff was permitted to prove, by parol evidence, the contract alleged between Rowland, Davis & Gillson, and Spooner & Lockie, relative to acquiring title to the lands in question. Defendants objected on the grounds that the contract was not in writing, and that the same being for the purchase of lands was void under the statute of frauds. The action of the court permitting parol evidence of this agreement is first assigned as error. Counsel for appellants, at the argument, claimed that the court erred, because it was not shown that in purchasing the legal title Rowland, at the time, paid any portion of the purchase money, and it appeared that only a part of the purchase money for Harvey’s interest was at the time of the purchase thereof, or subsequently, paid by Rowland. Counsel for respondent urged that the statute of frauds did not apply to this case, for the reason that tbe lands mentioned in the pleadings might be treated as so-much merchandise belonging to the parties to the enterprise; that there was no necessity of establishing a trust as to the lands oiHhe proceeds of their sale by appellants.
We shall consider the case from the standpoint that respondent was obliged to establish the same rights in the land before the sale to the C. and T. L. and F. Co. as-would have been requisite had this action been for the recovery of a deed from appellants conveying an undivided one-sixth interest in the land, instead of the same fraction of the proceeds of its sale. We shall proceed upon the theory that respondent cannot recover in this action, if he could not have recovered his alleged interest in the lands themselves prior to the sale to the O. and T. L. and F. Co. had appellants denied his claim, and refused to recognize him as a joint owner.
It is admitted that a trust concerning lands created by act or operation of law, may be proven by parol just as it., could have been before the statute of frauds was enacted;, also, that if the estate is purchased in the name of one person, and the consideration paid by another at the time the title is acquired, there is a resulting trust in favor of the latter. These principles are well established. It is also- *460 just as true that in order to establish a resulting trust from the payment of the purchase money, it must be shown that it was paid at the time the title passed; that no subsequent jDayment will satisfy the statute.
It was claimed by respondent in the court below that the agreement between the grantees of the Harvey deed was to purchase the whole title, and that the deed from Harvey was only one step contemplated and agreed upon in the beginning, while defendants contended that the agreement was confined solely to the Harvey purchase; that the subsequent purchase of land scrip and warrants, and thereby obtaining title from the State of California, was an afterthought in which Rowland did not in any manner participate. Respondent contended also that, in pursuance of the understanding and agreement of the parties in the beginning, Gillson, as the authorized agent of all the others, and acting for himself, purchased the scrip and warrants for Rowland as well as his associates, and from the moneys of Davis & Gillson, advanced to Rowland his pro rala »f the expense, and that, therefore, his portion of the purchase money was paid at the time. And although the findings upon these issues are claimed to be erroneous by appellants, and therefore that parol evidence of the agreement was inadmissible, it is not essential to consider them at this time in order to arrive at a satisfactory solution of the ■question involved in the objection under consideration, for the reason that the agreement was undoubtedly taken out of the operation of the statute by other facts and circumstances. It is said that parol evidence of the agreement was inadmissible, because the proofs show that Rowland did not at the time pay his proportion of the purchase money. But whether this be true or not, it should be remembered that payment of the purchase money is not a sine qua non in such a case, for prepayment is not the only method of creating a trust by act or operation of law. Certain other facts .and circumstances establish it with equal certainty.
“Implied trusts are: First. Those which stand upon the presumed intention of the parties; Second. Those which are independent of any such intention and forced upon the *461 conscience of the party by operation of law, as for example: In cases of meditated fraud, imposition, notice of an adverse equity, and other cases of similar nature.” (2 Story’s Eq. Jur. 435.)
The deed from Harvey shows, and, indeed, it is not denied, that Rowland was tenant in common with Davis & Gillson and Spooner & Lockie, in the land described in the deed, so far as the conveyance of Harvey’s title and possession could make them so, and that under this deed he became the owner of an undivided one-sixth interest in Harvey’s possessory title. But it is said that that title amounted to nothing; that the subsequent legal title lodged in Freeman in trust for Davis & Gillson and Spooner & Lockie, so absorbed it as to work its complete annihilation, and destroy all property rights theretofore acquired thereby. A better title than Harvey’s was necessary in order that the land might be enjoyed to its fullest extent and under all circumstances, but the possessory title was valuable. It could have been bought and sold under execution, and defendants Spooner and Davis, as well as Gill-son and Lockie, were anxious to get it and pay one thousand five hundred dollars for it. Evidently, it was supposed to be of especial value in obtaining the title in fee, and doubtless it was in fact so, for the reason that the statute provides that parties in possession, if otherwise qualified, shall be first entitled to receive the fee. And, too, the evidence shows that legal proceedings were had in Sacramento to remove jumpers from the lands applied for by Freeman, before the acquisition of the state’s title. But passing these considerations, the prominent and important facts remain, that for a common purpose and with united effort, from a common source and by the same instrument, the five co-grantees in the Harvey deed, became thereby, and until sale to the C. and T. L. and F. Co. remained tenants in common in this land, with relations so intimate that neither could refuse the others their proper proportion of the proceeds in case of sale, whether of the possessory right or title in fee.
Hncler such circumstances the law raised a resulting trust *462 iu favor of Rowland to tbe extent of a one-sixth interest, independent of the intention of the parties, and forced it upon the consciences of his associates by operation of law. The authorities sustaining this conclusion are numerous. In the well-considered case of Flagg v. Mann (2 Sumner, 520), Justice Story uses this language, which is entirely applicable to the case in hand:
“We are next led to the consideration of another point in the defense which is directly brought forward in the answer. It is that the agreement, even if clearly made out in point of fact, is void in law, as a parol agreement respecting the purchase of lands within the purview of the statute of frauds of the State of Massachusetts, * * which enacts that no action shall be maintained upon any contract or sale of lands, or any interest in or concerning the same unless the agreement is in writing. It seems not' disputed at the bar that the present agreement falls within the predicament of the statute, unless it is extracted from it by the fact that some title was, at the time of the purchase from the Frye heirs, vested in Flagg and Mann, under the deed from Richardson to them, or that that deed connected with the agreement between Flagg and Mann, created, per se, a fiduciary relation which would make the purchase, by operation of law, a purchase of trust for their joint benefit. It is a well-known rule of the common law, that where two persons are in possession of lands by an imperfect, or even a tortious title, such as a title by disseisin, a release to one of them will inure for the benefit of both. * * * But the doctrines entertained on this subject by courts of equity are far more broad and comprehensive. They proceed upon the maxim of general justice * * *■ that if a purchase is made by parties so interested by mutual agreement, neither party can rightfully exclude the other from what was intended to be for the common benefit; and that if one of the parties, by private intrigue, seeks to^ obtain without contract, but in violation of his good faith to his co-tenants or partners, a private benefit to himself in things touching the common right, it is a fraud which shall turn him into a trustee for the benefit of all.” The court *463 then quotes from Chancellor Kent, in Van Horne v. Fonda (5 Johns. Oh. 388, 407), wherein there was no agreement to obtain the original, together with the outstanding title, and adds: “The present case requires the application of principles of far less stringency and comprehensiveness. In the present case the community of interest (if any) arose from direct contract between the parties, and from a direct agreement not rescinded or abandoned, to purchase the original as well as the outstanding title upon their joint account. In such a case there would seem to be no room for doubt, that if the parties stood in the relation of co-tenants, or joint owners, a court of equity ought to deem the purchase of an outstanding incumbrance or adverse title by one to be a trust for the benefit of both, if not ex contractu, at all events in foro conscientiae.” * * *
“The other point, however, suggested at the argument by the plaintiff’s counsel is not undeserving of notice. It is that even if no title in the premises did pass by the deed of Luther Richardson to Flagg and Mann, yet, nevertheless, there was a color of title in him at the time, and that the deed itself being accepted by Flagg and Mann, and the assignment being taken, and the notes given, under and in virtue of the parol agreement between them for the joint purchase from Richardson, these facts did of themselves create a privity of claim and right in the premises sufficient to establish a fiduciary relation between them. And if such a fiduciary relation actually did exist, then the purchase of Mann from Walker and Fisher and from the Frye heirs must be treated in equity as a purchase for the joint account of Flagg and Mann. There is great force in the argument, and I am not prepared to say that it is not well founded. In the first place, it seems to me clear that if there had been a written agreement between Flagg and Mann to make the purchase from Richardson, and the purchase had been executed accordingly, while that contract remained unrescinded it would have created a privity of contract between them which would establish a fiduciary relation for all purposes connected with the premises, whatever might be the state of the title.” * * *
*464 “However, in tlie present case, I do not mean to rely upon any fiduciary relation arising from privity of contract, but upon a fiduciary relation arising from privity of title and estate between Flagg and Mann. In this view of the case the purchase made directly by Mann of Walker and Fisher, and also the purchase made through Adams, of the Frye heirs, must be deemed, so far as Mann is concerned, as made on the joint account of Flagg and Mann.”
We have felt justified in making copious extracts from this opinion, first, because the case is in many respects analogous to the one under consideration; and, second, because of the high source from which it emanated. The opinion in the case of Van Horne v. Fonda, supra, by Chancellor Kent, is quoted with approval by Justice Story, and it sustains the same principles. (See, also, Venable v. Beauchamp, 3 Dana; Ky. 324; Morgan’s Heirs v. Boone’s Heirs, 4 Mon., Ky. 297; Holridge v. Gillespie, 2 Johns. Ch. 33; Rothwell v. Dewees, 2 Black. U. S. 613; Sneed's Heirs et al. v. Atherton, 6 Dana, 278; Tanner v. Elworthy, 4 Beavan, 490; Burhans v. Van Zandt, 7 N. Y. 523; Rupp v. Orr, 31 Pa. 517; Lloyd v. Lynch, 28 Pa. 419; Burrill v. Bull, 3 Sandf. Ch. 15; Mandeville v. Solomon, 33 Cal. 38; In re Brown's Estate, Myers's appeal, 2 Barr. Pa. 463; Frentz v. Klolsch, 28 Wis. 317; Freeman on Co-tenancy and Partition, sec. 150, et seq.)
At section 163, Mr. Freeman says: “A question has been raised, whether in order to estop a party from acquiring an adverse claim, he must not be a tenant in common of some title. In some cases, where two or more have purchased from one whom they supposed to have title, and it turned out that he had none whatsoever, it has been determined that each was at liberty to obtain the whole tract from the true owner. ‘The bare fact that each had been cheated neither gave any right to the other nor deprived him of the full audj absolute right to purchase from the real owner when discovered. (Smiley v. Dixon, 1 Penrose & Watts, 440; Roberts v. Thorn, 25 Tex. 734.) The cases which approve this language involved a determination of the rights of persons who had m'ade purchases from a claimant *465 believing him to have a title. The lands purchased seem to have been vacant public lands. The interest acquired under the deed was neither possession nor the right of possession. It was properly described in one of the cases as ‘mere moonshine,’ and in each case it was adjudged to have no force to prevent either party from obtaining title in his own name, and for his own use, from the government. These cases were probably determined correctly, but it is manifest that the principles announced in them should be confined to the identical cases. There may be no valid objection to permitting a person to acquire for his own use vacant lands owned by the state or federal government, notwithstanding he may have before been so unfortunate as to be concerned in a joint purchase from one having no title. But to say, generally, that co-grantees are not liable to the restraints imposed on co-tenants, merely because they obtained no title, would be to except out of the general rule those cases in which equitable considerations most imperatively demand its enforcement. No doubt, in these, as in all other cases, the test to be applied is to consider the actual relations of the parties, rather than their nominal relations. If, notwithstanding the fact that they are named co-grantees in the deed, they acquired nothing from their purchase, and either never exercised the rights of joint owners, or have ceased to consider themselves within the relation of co-tenancy on account of their failure of title, then both shall be free to deal with the subject-matter of their former purchase. If, on the contrary, though they have no title, the parties continue to regard each other as co-tenants, and if on that account they are apparently sustaining toward each other relations of trust and confidence, then neither should be at” liberty to act in hostility to the interests of the other. If a distinction is to be taken in regard to the restraints imposed on co-tenants, based'upon the difference between want of title and defective title, then the very embarrassing question must frequently exist, as to the point where a defective title becomes so defective that it may be regarded as ‘ mere moonshine.’ Whenever an outstanding title is paramount *466 to that of the co-tenants, then their title, though some may term it defective only, is in fact no title. To hold that co-tenants are bound only when they have title is, therefore, holding that they are free, except when neither can injure the other.”
The cases referred to by Mr. Freeman — Smiley v. Dixon and Roberts v. Thorn — are in no respect opposed to the doctrine laid down in the text; nor are we able, after exhaustive research, to find any well considered case that does not sustain his conclusions. We therefore hold that there was such privity of title and estate between Rowland and his co-grantees in the Harvey deed, that independent of intention, an implied trust in favor of Rowland existed subsequent to the acquirement of the title from the state of California, and that parol testimony of the agreement was admissible. We are also of the opinion that the court was justified from the evidence in its conclusion, stated in the second finding of fact. The testimony of Grillson and Rowland fully sustain it and many circumstances corroborate it. We conclude then, that by reason of privity of title, as well as of agreement executed in part, there was a fiduciary relation existing between the parties sufficient to make the subsequent purchase for their joint benefit.
Having arrived at this conclusion, it is unnecessary to decide whether Davis & Gillson, at the time of the purchase of the land scrip and warrants, in fact loaned the purchase money to Rowland or not.
If we should conclude that they did make the loan, and that one-sixth part of the purchase money for the scrip was Rowland’s, that fact would only bring us to the conclusion that there was a resulting trust in his favor, to which we have already arrived for other reasons; and should we conclude there was no loan, there would yet remain a resulting trust to which the same consequences must follow, regardless of the question of payment of the purchase-money for the subsequently acquired title.
It is admitted that prior to the commencement of this action neither Rowland nor plaintiff tendered to appellants any portion of their expenditures in acquiring the title from *467 the state of California, although respondent testified that he asked appellants for a statement of the same prior to the suit. It is a well settled principle that a trustee shall be allowed all proper expenses incurred in the discharge of his duties, and that a tenant in common who acquires an outstanding title beneficial to his co-tenant shall be fully recompensed before a court will require him to convey to his co-tenant. Whether, in all cases, it is necessary for the cestui que trust to tender the amount due before bringing suit for the property in specie, it is not essential in this case to decide. In an action to recover the proceeds of the sale of the trust property, under the circumstances attending this case, there is no reason for the rule invoked by counsel for appellants that the cestui que trust must tender his portion of the expenses before he has any standing- in court, for the reason that at the time the action was commenced there was more trust money in their hands than the aggregate expenditure, both according to the findings of the court, to which no exception is taken, and according to their own statement and tender to respondent prior to the commencement of the action. The law does not require so useless a thing as the tendering of an additional sum under such circumstances.
It is next claimed by appellants’ counsel that both Freeman and Patón were purchasers without notice, and that they cannot be bound by any secret trust.
As to Freeman, it is sufficient to say that at the time the title from the state of California was acquired he had no pecuniary interest in the lands; that he was made a naked trustee to hold the title for the parties beneficially interested. In other words, he was a mere volunteer. If he has any interest in the proceeds of the sale, it is by virtue of a subsequent purchase of an equitable interest in the lands, like Patón. They admit in their answer that they, with other appellants, received the money paid by the C. and T. L. and F. Co., and it can be followed into their hands by respondent, notwithstanding they had no actual notice at the time. The defense of purchase for value without notice does not apply to them.
*468 "When Freeman bought in with Davis and Patón into the firm of Spooner & Lockie, and Spooner, Lockie & Co., the legal title to these lands was in Freeman, and the above-named firms and the members thereof owned only an equitable interest in them. Freeman and Patón, therefore, purchased only an equity in the lands. At that time Bowland also had an equity in them.
“ As between persons claiming merely equitable interests, the defense of purchase for value without notice has no place. A party who purchases an equity takes it subject to all the equities which affect it in the hands of the assignor. The first grantee of an equity has the right to be paid first, and it is quite immaterial whether the subsequent incumbrancers had, at the time they took their securities and paid their money, notice of a prior incumbrance.” (Kerr on Fraud and Mistake, 321.)
Before one can take an estate discharged of a prior equity, it must appear that he acquired the legal title and actually paid the purchase money or parted with something of value by way of payment before receiving notice.
At the trial, counsel for appellants asked witness Bow-land if he remembered any conversation between himself and Gillson, inwhich the payment by Bowland of his part of the purchasemoney was mentioned.
The court ordered the witness to answer yes or no. The answer was : “I don’t think there was any on that day.”
The answer was stricken out because it was not responsive to the question.
The same question was asked again, and the witness answered, “ I don’t know.”
The answer was stricken out for the same reason.
The question, in substance, was again asked and answered as at first, and the answer was stricken out.
Appellants urge that the striking out of these answers was error. Appellants, undoubtedly, had the right to have the question answered as the court ordered; but respondent’s privilege was to have the answer responsive to the question and in accordance with the court’s order. As given it was neither. Counsel for appellants might have insisted upon an answer “yesor no,” but he did not do so. No objection *469 was taken to the order of tlie court instructing the witness how to answer, and while the order was in force, no other answer was permissible. When another answer was given, the court, without motion of counsel, could have ordered-it stricken out.
Witness Bliss, who purchased the lands in question for the C. and T. L. and F. Co., after testifying that before purchase, but with a view of determining its value, in company with Davis, Spooner, Bowland and another man, he went over the land, was asked if Bowland knew at the time that he was looking at the land with a view of purchasing it from Davis, Freeman, Spooner and Patton, and the answer was that he did.
He was then asked by counsel for appellants if Bowland, then or at any time before the stile, made known to witness the fact that he had or claimed any interest whatever in the land. Objection was taken to the question. The court held that appellants must first show that Bowland knew' that witness was there for the purpose of purchasing the whole tract. Nothing further was shown, and the objection was sustained. This is claimed as error. The question was in no sense proper. Bowland was under no obligation, in law or morals, to inform Mr. Bliss that he claimed an interest in the lands, since he did not, and does not, object to the sale. Had he made known his claim, proof of that fact would have established no rights in his favor; and the fact that he did not volunteer a statement of his claim certainly could not defeat it. Some men might have told Bliss that they owned an interest if such was the fact, but many others would not. It does not appear that at that time appellants had denied his claim in the lands, and if they had not it would have been a strange proceeding on Bowland’s part to volunteer the information that he had or claimed an interest.
It is next urged that the court erred in refusing to allow appellants to prove by witnesses Spooner and Shanklin that a less number of acres were patented of the Harvey tract than is alleged in the complaint. Such proofs would certainly have been immaterial, because it is admitted in tbe pleadings that all the lands included in the Harvey tract were sold to the C. and T. L. and F. Co., whether patented *470 or not. If they were patented, Freeman held them in trust for Bowland as well as his associates; and if any were not patented Bowland was interested in such to the extent of one-sixth part under the Harvey deed. It being true, then, that both the patented and the unpatented lands were sold for eight dollars and sixty cents per acre, it was immaterial, for the purposes of this case upon this question, how many acres of the Harvey tract were patented. Finally, counsel for appellants urge that the findings numbers two, four, five, six, eight, twelve, thirteen, fourteen, fifteen and twenty are not supported by the evidence. We have already passed upon the second finding. Of the fourth, objection is taken to the last sentence only. As to that, there is much to sustain it.
The testimony is conflicting, and therefore, under well known principles, we cannot disturb it. Besides, if it is incorrect, it is error without injury to appellants, for the reasons before stated; and the same is true as to number six.
As to the fifth and eighth, the evidence is also conflicting. We cannot disturb them.
Objection is taken to the twelfth and thirteenth, so far as it is found that the parties therein named had notice. We have seen that Patón and Freeman required no notice, and the balance certainly had notice of all the facts that are important in this case. What has been said of number two is equally applicable to number fourteen. Number fifteen is supported by the evidence and pleadings. Number twenty is objected to so far as a tender is found. Whether a technical tender by appellants to respondent was or was not made, is not a question for our decision. It is undisputed that appellants, before this action was commenced in Carson, offered then and there to pay respondent certain moneys in satisfaction of his claim, and upon his refusal to accept the money in satisfaction, informed him that the sum offered would be placed in bank subject to his acceptance. The court used the word “ tendered ” in its popular sense only.
The order and judgment appealed from are affirmed.