[Randolph, et al. v. Vails, et al.]

# Randolph, *et al.* v. Vails, *et al.*

## *Bill for Partition.*

(Decided November 21, 1912.   60 South. 159.)

1. *Executors and Administrators; Nature of Trust.*—An administrator is clothed with the legal title to the personal property of the estate and charged with the payment of the debts of the estate out of such property, and with reducing such assets to cash for distribution and therefore stands in the relation of a trustee to the distributees.

2. *Same; Real Property; Title and Authority.*—An administrator is clothed by statute with large powers as to the real estate and he may rent it. and for such purposes, and under proper orders of a court of competent jurisdiction. he may sell it. but in each case charging himself as trustee.

3. *Same; Sale of Realty; Purchase by Administrator.*—The purchase by an administrator at his own sale of the lands of his intestate is voidable at the option of the cestui que trust, and it is immaterial whether the purchase is by the administrator in his own name, or through another who subsequently conveys to him; however an administrator having an interest in the property sold may purchase at the sale of the property of the estate, if there is no unfairness, and the property is exposed for sale under the ordinary mode and such circumstances as to command the best price.

4. *Descent and Distribution: Title of Heirs; Real Property.*—The legal title to land of an estate descends to the heirs subject to the payment of the debts of the estate. in case the personalty proves insufficient for that purpose. and subject to certain statutory powers of the administrator.

5. *Equity; Pleading; Construction.*—Upon demurrer the allegations of a bill are taken most strongly against the pleader, and on a matter as to which the bill was silent the inference will be taken most strongly against the pleader.

6. *Same; Dismissal; Rights of Minors.*—Where because of their laches the adult complainants in a bill are without standing in equity the court will dismiss the bill without prejudice because of the possibility of equitable rights in complainants, who are minors.

7. *Tenancy in Common; Mutual Rights; Purchase of Outstanding Title.*—The general rule is that the purchase or extinguishment of an outstanding title to, encumbrance upon, or claim against, the common property by one tenant in common inures to the common benefit of all the co-tenants who elect, within a reasonable time, to take the benefit of such purchase. Hence a tenant in common cannot in equity acquire title to the common property solely for his own benefit or to the exclusion of his co-tenants.

[Randolph, et al. v. Vails, et al.]

8. *Quieting Title; Right of Action; Possession.*—In a bill to remove a cloud on title to land affecting the legal title, the complainant must show possession at the time of the filing of the bill, but if he has only the equitable title without actual possession, possession need not be alleged.

9. *Mortgages; Sale Under Power; Purchase by Administrator.*— Where a mortgagee sells land of decedent under a power of sale and purchases it for the benefit of the administrator of the estate the transaction is not a purchase by the administrator at his own sale; however, in view of the administrator's trust in the personal property and his duty to pay the mortgage and prevent the sale if the personal property was sufficient for that purpose, such a purchase will be regarded in equity as for the common benefit of all the heirs who elect to avail themselves of such a purchase within a reasonable time, even if such purchase was made in good faith and for a fair price, unless the administrator has an interest in the land.

10. *Same; Setting Aside.*—Where an administrator having an interest in the land buys land of his intestate at a mortgage sale at less than its value, or at a sale not fairly conducted, the heirs must proceed within a reasonable time after discovery of the fraud if they would disaffirm the sale because of such fraud; the reasonable time for such election being two years from the date of the mortgage sale, also being dependent upon the situation of the parties and circumstances.

11. *Same.*—The allegations of the bill considered and held to sufficiently allege fraud as against the administrator, the other respondent and the mortgagee so as to authorize rescission of the sale and purchase.

12. *Same; Laches.*—The allegations of the bill considered and held to show such laches on the part of the other heirs as to deny them the right to maintain the action, as the administrator and his corespondent had divided the land between them and third parties had acquired interests therein.

13. *Same; Foreclosure and Powers; Effect.*—A foreclosure under the powers of sale in a mortgage is equivalent to a foreclosure in equity.

APPEAL from Lamar Chancery Court.

Heard before Hon. WM. H. SIMPSON.

Bill by M. A. Randolph and others against Jerry W. Vails, and others, to declare certain transactions a cloud upon title, to remove the same and for the sale of lands for partition. From a decree dismissing the bill complainants appeal. Affirmed, with directions that the dismissal be without prejudice.

WILSON KELLY and THETFORD & MCKENZIE, for appellant. A purchase by a co-tenant of an outstanding

title or encumbrance against the common estate will enure to the benefit of all, such purchaser being entitled to contribution.—17 A. & E. Enc'y of Law, 674; *Inglis v. Webb,* 17 Ala. 387; *Bailey v. Campbell,* 82 Ala. 342; *Donner v. Quartermas,* 90 Ala. 154; *Jones v. Matkin,* 118 Ala. 341. Under these authorities the statute of limitations of two years does not apply to this case. The administrator was a trustee and must be held to have acted for his cestui que trustents.—*Williams v. Powell,* 66 Ala. 20; 65 Mich. 262. The contention that a delay will constitute laches in favor of an express trust is without merit.—*Hasty v. Aiken,* 67 Ala. 313; *McCarthy v. McCarthy,* 74 Ala. 546; 2 Perry on Trusts, section 863. No tender was required in this case.—Section 5232, Code 1907; *Thomas v. Jones,* 84 Ala. 302; *Murphy v. Summerlin,* 14 Ala. 54.

WALTER NESMITH and J. W. LOVING, for appellee. The bill is an attempt on its face to set up a stale demand and hence could be reached by demurrer.—*Scrugg v. Decatur Co.,* 86 Ala. 173; *Goree v. Clements,* 94 Ala. 337. The mortgage was strictly foreclosed and the right of redemption must be exercised within the time allowed by the decree.—*Goree v. Clements, supra;* *Mewburn v. Bass,* 82 Ala. 632. The bill should have averred a proper tender before bill filed.—*Beatty v. Brown,* 101 Ala. 695. A trust in lands cannot be created by parol.—*O'Brien v. O'Brien,* 49 South. 319. The bill was not good as a bill to quiet title.—Sections 5443 and 5444, Code 1907; *Adler v. Sullivan,* 115 Ala. 582; *Loeb v. Wolff,* 116 Ala. 273; *McCrary v. Guyton,* 51 South. 512; *Jordan v. McClure Lbr. Co.,* 54 South. 421. The bill was multifarious.—*Bullock v. Knox,* 96 Ala. 195; *West v. West,* 90 Ala. 458.

[Randolph, et al. v. Vails, et al.]

DE GRAFFENRIED, J.—Undoubtedly the relations of trustee and cestui que trust exist, so far as the personalty of an estate is concerned, between an administrator and the distributees of an estate. The administrator is clothed with the legal title to the personalty, is charged with the payments of the debts of the estate out of such personalty, and with reducing the personal assets to cash, to the end that the distributees of the estate, his cestui que trusts, may receive their distributive shares of such estate.

While our statutes confer large powers upon the administrator of an estate over the real estate of the intestate, the legal title to such lands descends to the heirs of such intestate. It is *their* land, subject, of course, to the payment of the debts of the intestate if the personalty proves insufficient for that purpose, and subject to certain powers which our statutes confer upon the administrator while acting as such administrator. He may rent out such lands; and if he does so he, in the performance of *that* act, is a trustee, and is chargeable as such trustee. He may, for certain purposes, under the orders of a court of competent jurisdiction, *sell* the lands; and if he does so, then, in the performance of that act, he is a trustee, and is chargeable as such. For this reason it has been many times held that the purchase by an administrator *at his own sale* of the lands of his intestate is voidable at the *option of the cestui que trust,* and will be set aside by a court of equity if application for that purpose is made *within a reasonable time.—James v. James,* 55 Ala. 525.

It, of course, makes no difference whether the purchase is made by the administrator in his own name, or through the medium of some other person, who subsequently conveys to such administrator.—*Calloway v. Gilmer,* 36 Ala. 354.

[Randolph, et al. v. Vails, et al.]

"To this eminently wise and conservative principle, the previous decisions of this court require us to recognize a single exception; that is, that such executors and administrators as *have an interest in the property sold* may purchase at a sale of the goods of the estate, provided there is no unfairness, and the property is exposed to sale in the ordinary mode, and under such circumstances as will command the best price."—*Calloway v. Gilmer*, 36 Ala. 354.

There seems to be no doubt about the fact that a tenant in common "will not be permitted to inequitably acquire title to the common property solely for his own benefit, or to the exclusion of his cotenants; the general rule being that the purchase or extinguishment of an outstanding title to, incumbrance upon, or claim against, the common property by one tenant in common inures to the common benefit of all the co-owners who may, *within a reasonable time*, elect to avail themselves of the benefit of the purchase of the outstanding interest or conflicting claim, or the removal of the incumbrances from the common property."—38 Cyc. 40, 41, and authorities cited in the notes; *Savage et al. v. Bradley*, 149 Ala. 169, 43 South. 20, 123 Am. St. Rep. 30; *Lehman, Durr & Co. v. Moore*, 93 Ala. 186, 9 South. 590.

(3) M. E. Vails died, a resident citizen of Lamar county, on the 24th day of July, 1900, leaving as his heirs nine children and five grandchildren; four of the grandchildren being the children of a deceased child, and the other grandchild being the only child of another deceased child. At the time of his death he owned certain real estate, a part of which was covered by a mortgage to M. L. Smith, and the other part by another mortgage to P. W. Kemp. These lands, of course, subject to the above mortgages, descended to the above children and grandchildren as tenants in common.

Shortly after the death of said M. E. Vails, one of his children, Jerry W. Vails, qualified as his administrator. At the time of the death of said intestate, another of his children, Jacob W. Vails, owed him $175, which was secured by a mortgage on certain lands which had been sold by said intestate.

On the 10th day of November, 1900, M. L. Smith sold the said lands of said intestate under the power contained in said two mortgages, and bid them in at the sale. On the 26th day of November, 1900, the said Smith conveyed the said lands to the said Jerry W. Vails (then the administrator of the said estate, as we have already stated) and to said Jacob W. Vails as tenants in common. On the 4th day of January, 1904, the said Jerry W. and Jacob W. Vails divided the lands and executed conveyances to each other, evidencing such division. All of the conveyances above referred to appear to have been filed for record in the probate office of Lamar county shortly after their execution and delivery.

(4) This was, in reality, a bill to remove a cloud from the complainants' title to an undivided interest in the lands described in the bill; but, for the purposes of this opinion, we will treat the bill as simply a bill in equity filed by the complainants, who are some of the heirs of M. E. Vails, as tenants in common, against their cotenants in common, who are the remaining heirs of said M. E. Vails, for a sale of the lands of which said M. E. Vails died seized and possessed, for the purpose of distributing among its owners the proceeds derived from such sale. The bill alleges that the parties to the bill are tenants in common of the land; that it cannot be equitably divided among its owners; and that it is necessary that a sale be had for the purposes of distribution among its owners. By treating the bill of com-

plaint in the manner above pointed out, we get at once to the vital issues between the parties, and strip the case of a needless discussion of its minor matters.

The sale by M. L. Smith of the lands, under the power of sale contained in the two mortgages, was *not* a sale by the administrator of the land. If Smith's purchase at his sale—and under provisions in each mortgage he was authorized to buy at his sale—was for the benefit of Jerry W. Vails (then administrator) and Jacob W. Vails, that purchase was not a purchase of the land by the *administrator at his own* sale, within the meaning of the law. As the administrator was, as to the personalty of the estate, a trustee for complainants, as it was his duty, if the personalty was sufficient for the purpose, to have paid the mortgage debts and thus have prevented the sale, and as his relation to the heirs, for the above reasons and because of his statutory powers and duties relative to the land, was, *as to the land,* not that of a *trustee,* but, nevertheless, of a fiduciary character, the above purchase, if made for *his* benefit, *even for a fair price, in good faith,* would have been regarded in a court of equity as a purchase for the common benefit of all the heirs who, *within a reasonable time,* elected, in an appropriate way, to avail themselves of such purchase, except for the fact that he is shown by the bill to have owned an interest in the land when it was sold. While this exact proposition does not appear to have been heretofore announced, this conclusion seems to be in harmony with principles declared in cases presenting questions of much similarity to the one now under discussion.—*Daniel v. Stough,* 73 Ala. 379; *James v. James,* 55 Ala. 525; *Foxworth v. White,* 72 Ala. 224; *Savage v. Bradley, supra.*

When an administrator *with an interest* in the lands buys the lands of his intestate at a mortgage or other

sale at *less than* their value, or the sale is not *fairly* conducted, then if, for such *fraud* in the sale, the heirs elect to disaffirm the sale they must do so by instituting appropriate proceedings within a reasonable time after the discovery of the fraud. Such a purchase by *an administrator with an interest* in the land is violable at · the election of the heirs because of the *fraud,* and only because of the *fraud;* and it is a familiar proposition that when a conveyance is sought to be avoided in a court of equity on the ground of fraud the actor must invoke the aid of the court within a reasonable time after the discovery of the fraud.—*Goree v. Clements,* 94 Ala. 337, 10 South. 906. In such instances the reasonable time within which the heirs must act must, of course, depend upon the situation of the parties and the circumstances of the particular case.—*Goree v. Clements, supra; Savage et al. v. Bradley, supra.*

(5) In the instant case the purchase was made at a mortgage sale, or shortly thereafter from the purchaser at such sale, by two tenants in common, one of whom was the administrator of the estate of the ancestor from whom the lands descended; and that purchase, if made in good faith and without actual fraud, inured to the benefit of all the tenants in common, provided they, within a reasonable time, elected, in the manner provided by courts of equity, to so treat the purchase. In *ordinary* cases the reasonable time for the exercise by the co-owners of such election has been by this court declared to be two years from the date of the mortgage. —*Savage et al. v. Bradley, supra.*

The above rule should be adhered to, unless the particular circumstances of a case take it clearly out of the operation of the rule. Our laws governing the statutory right of redemption of real estate sold under the powers contained in a mortgage give to the mortgagor,

his heirs, etc., two years within which to redeem the land, and after that time declare that the title of the purchaser at such sale, if the land has not been redeemed, is absolute. The repose, confidence, and security of business transactions require, therefore, that such purchases, after the lapse of two years without redemption, shall be free from attack, unless the situation of the parties and the equities of the situation are such as to shock the conscience of a court of equity and require the application of some other rule.—*Savage et al. v. Bradley, supra.*

(6) In the present case the bill alleges that prior to his death the said M. E. Vails conveyed to *one* of the purchasers, Jacob W. Vails, a part of his land and took from him a note, secured by mortgage on the land sold him, for the purpose of providing the means with which to discharge the indebtedness secured by said two mortgages; that the amount due by said Jacob W. Vails to said M. E. Vails, at the time of the death of M. E. Vails, on said note and mortgage was sufficient to pay the said debts of M. E. Vails secured by said two mortgages; that soon after his father's death the said Jacob W. Vails "took the said mortgage from among the papers of the said M. E. Vails and destroyed or withholds it"; and that no part of said debt of Jacob W. Vails has ever been paid.

The bill further alleges that Jerry W. Vails, after his appointment as administrator, and while acting as such, "conspired with his brother, Jacob W. Vails, to have the said M. L. Smith foreclose his mortgage on the land mentioned in paragraph 3 of this bill, that the said Jerry W. Vails and Jacob W. Vails might buy this valuable tract of land for a small sum of money, to the damage of the other heirs at law of the said M. E. Vails, and the complainants aver that the mortgage from M.

E. Vails to P. W. Kemp, marked 'Exhibit B' to this bill, was never lawfully transferred to the said M. L. Smith, but in some way unknown to the complainants he became in possession of said mortgage, and did, on or about the 10th day of November, 1900, sell the said lands under the two mortgages, as per said agreement with the said Jerry W. Vails and Jacob W. Vails; that the auctioneer at said sale made no deed or memorandum in writing to the said M. L. Smith, who became the purchaser at said sale; that the auctioneer sold the land under the two mortgages all at one and the same time, all together at one bid, the said M. L. Smith being the only bidder at said sale; that said lands were cried off so hurriedly that no one was given a chance to raise the said M. L. Smith's bid; that on November 26, 1900, the said M. L. Smith deeded the land sold under said mortgage to said Jerry W. Vails and Jacob W. Vails; that immediately after said sale complainants went to said Jerry W. Vails and Jacob W. Vails and proposed to furnish money to redeem the lands, and said Jerry W. Vails and Jacob W. Vails told them that if they would be quiet and let them alone that they would redeem the said lands, but that if they did not let them alone they would see that they did not get anything out of the land for 21 years; that Jerry W. Vails and Jacob W. Vails sold timber and received rents and profits from the said real estate sufficient to more than pay all of said indebtedness before the statute of limitations had run against the redemption of said lands; and that said Jerry W. Vails, as administrator, made no effort to pay off said indebtedness, although he had effects in his hands or under his control belonging to said estate sufficient to pay the indebtedness."

The bill of complaint, when fairly construed, also shows that when Jacob W. and Jerry W. Vails made

the above purchase from M. L. Smith on November 26, 1900, they paid him no part of the purchase money, but gave Smith their note for the same and secured the payment of the note by a mortgage on said land. This fact may throw some light on the above allegation of the bill that when complainants, shortly after the sale by Smith to Jacob W. and Jerry W. Vails, offered to furnish the money to redeem the land the said Jerry W. and Jacob W. Vails told them "that if they would be quiet and let them alone they would redeem the said lands."

The bill also alleges that on the 4th day of January, 1904, nearly *six* years before the bill was filed, the said Jacob W. Vails and Jerry W. Vails, to use the language of the bill, made a "divide of said land; each making the other a deed to certain portions thereof."

Taking the allegations of the bill of complaint most strongly against the pleader, which, upon demurrer, it is our duty to do, we do not think that the pleader could, by any averment which he *failed* to make in his bill, have strengthened the *impression* that he intended to make that there was actual fraud on the part of Jacob W. and Jerry W. Vails in the purchase of the lands at the foreclosure sale. While Smith, the mortgagee, had the right and power, under his mortgage, to sell the lands at public sale for the satisfaction of the mortgage debts, and his purposes in making the sale will, for that reason, not be inquired into, he had no right, by collusion with the purchasers, to so offer the land as to preclude the possibility of competitive bidding, for the purpose of injuring the complainants; and if he did this, as alleged in the bill, he made himself a party to the fraud, and subjected the sale so made, upon the reasonable and appropriate action of the complainants, to a rescission on account of such fraud.

[Randolph, et al. v. Vails, et al.]

It must be remembered, however, that under the statutes of the state and the rules above announced two years is ordinarily a reasonable time within which to avoid such a sale, and that, to take themselves out of the operation of that rule, the complainants must present some substantial reason for their delay. All of the facts constituting the alleged fraud were, so far as the allegations of the complaint show, known to the complainants when, on November 26, 1900, Jacob W. Vails and Jerry W. Vails acquired their title to the land. But for the fact that the said Jerry W. and Jacob W. Vails did not pay the purchase money in cash, coupled with the alleged statement that they told the complainants that "if they would be quiet and let them alone that they would redeem the said land, but that if they did not let them alone they would see that they did not get anything out of the land for 21 years," we would unhesitatingly hold that after the expiration of two years after the sale of the land the rights of the complainants were gone.—*Savage et al. v. Bradley. supra.*

The bill in this case was filed on November 19, 1909, more than 9 years after the lands had been sold by Smith under the mortgages and bid in by him for Jacob W. and Jerry W. Vails, more than 7 years after that usual reasonable period given by a court of equity to a cotenant within which to evidence his election to assert the rights which a court of equity secures to him in such cases, and almost 6 years (5 years 10½ months) after Jacob W. and Jerry W. Vails had divided that land between them; each making a deed to the other conveying the title in severalty to certain portions thereof. During that period of 9 years, the said Jerry W. Vails probably made a final settlement of his father's estate. There is nothing in the bill of complaint indi-

cating when that settlement was made, if, in fact, one was made. As the bill is silent on the subject, we presume, taking its allegations most strongly against the pleader, that the final settlement was made, as required by law, within a reasonable time after the lapse of 12 months next after the grant of letters of administration. As the estate of the father was evidently a small one, it is probable that the settlement of the estate, if one was had, was made prior to the division of the lands by Jacob W. Vails and Jerry W. Vails on January 4, 1904, which was more than 3 years after the grant of letters of administration. During this same period of 9 years, as shown by the allegations of the bill of complaint, *strangers* had, through Jacob W. and Jerry W. Vails, become interested in some way in said lands, and, as suggested by counsel for the respondents in their briefs, these strangers, whose claims upon the land are also made the subject of attack by the bill, may have acquired their interests in the land shortly before the filing of the bill. So far as the allegations of the bill go, these strangers may, while relying upon the conveyances attached as exhibits to the bill, all of which were properly recorded, and which conveyances, under our statutes, operated, in the absence of fraud, after 2 years, to cut off the statutory right of redemption and vest the absolute title to the land, freed from all conditions, in the purchaser at the mortgage sale, after a careful examination of the title, have made their purchases of the land, or obtained their claims upon the land, in the utmost good faith and for a valuable consideration.

We are led to make these observations because they tend to illustrate the importance of the enforcement by courts of equity of the doctrine of laches. The proper enforcement of the salutary rules growing out of that

doctrine not only tends to *protect* the innocent or the unwary in their *rights,* but protects them, also, from the annoyance, the expense, and uncertainty of litigating stale demands.　While, under all the facts set up in the bill of complaint, we are inclined to the opinion that the complainants may have been entitled to more than 2 years within which to assert their rights in a court of equity, we do think that as the complainants waited 9 years after the mortgage sale before filing this bill they were guilty of such laches as precludes their right to obain, in a court of equity the relief prayed for in the bill.

It must be remembered that the public is interested in the stability and integrity of titles to land, and that it is much easier to establish or disprove uninterrupted adverse possession for a long period of years than it is to establish or disprove the existence of some isolated fact, dependent upon the recollection of witnesses, after the lapse of the same period of time.　A purchaser of land from a party in possession, who has been in possession of that land under a purchase at a mortgage sale, which appears to have been regularly made, not 2 years, but 9 years, before, and whose possession has been uninterrupted and hostile, under claim of right, for that period, has a right to presume that, as the statutory period for the redemption of such land has so long expired, and no suit has been instituted in any court questioning the validity of the sale, the title to the land is not only *valid* but *unassailable* in any court. We can see no reason for extending the period within which a suit like the present can be instituted, under facts similar to the present, to 10 years.　The statutory period of 2 years within which land may be redeemed furnishes, by analogy, the rule for ordinary cases of this character; and while, in the application of the

doctrine of laches, courts of equity will be guided largely by the *facts of each particular case,* and they will, as we have already said, never come to the relief of him who, with a full knowledge of all of the facts, has acquiesced for such a period of time "as affords cogent evidence of a waiver and abandonment of the right."— *Ponder v. Cheeves,* 90 Ala. 117, 7 South. 512; *Stephenson v. Harris,* 153 Ala. 462, 45 South. 196.

It has been frequently held that a foreclosure under the power contained in a mortgage is equivalent to a strict foreclosure in equity, and without further discussion we think it apparent, under the facts set up in the bill, that the rights of the complainants have been lost by their laches.—*Stephenson v. Harris,* 153 Ala. 462, 45 South. 196.

All that we have above said applied to the bill as amended, as well as to the original bill.

(7) We are inclined to think that the pleader, in preparing his bill, made certain allegations in his bill for the purpose of giving it equity, upon the theory that all bills in the nature of bills to remove a cloud from the title to land, or for the cancellation of deeds or other instruments affecting the title to real estate, if filed primarily for that purpose, must show that the complainants were in possession of the land at the time of the filing of the bill. This is almost universally true when the complainants are the owners of the *legal* title, but is not usually true when their title is not a *legal,* but only an *equitable* one. The owner of the legal title, if out of possession, and possesion is denied him, may bring an action of ejectment against the party in possession and thus regain possession. The holder of only an equitable title has ordinarily *no* legal remedy against a party in possession of his land—has no plain or adequate remedy at law—and he is not, in such an appeal

to equitable relief, required to have possession of the land, or to aver in his bill that he has such possession.

(8) In the above we have disposed of the matters of vital importance in the present case. There were numerous matters set up in the bill to which we have not referred. There were also numerous grounds of demurrer to the original bill and to the bill as amended, to which we have not alluded, and many subjects not discussed by us in the above opinion are discussed by counsel in their briefs. We have passed these matters without discussion, because we have deemed a discussion of them unnecessary.

(9) The chancellor, having come to the conclusion that the complainants were without remedy, dismissed their bill as amended. One of the complainants was, when the bill was filed, a minor. Some of the respondents were minors. These minors appear to have been of tender age when M. E. Vails died. They were the nieces and nephews of Jacob W. and Jerry W. Vails, and Jerry W. Vails appears to have been the administrator of their grandfather's estate. The adult heirs of M. E. Vails have, by their laches, lost their interest in the lands and their right of appeal to a court of equity for relief. It is possible that the said minors may have some rights in said lands which a court of equity can secure to them. It therefore seems to us that, on account of the possible rights of such minors, the bill should have been dismissed without prejudice.

The decree of the chancellor dismissing the bill as amended is affirmed, but it is ordered that the dismissal be made without prejudice.

Corrected and affirmed. All the Justices concur.