## Stamps, et al. v. Frost, et al.

(Decided February 22, 1918.)

### Appeal from Allen Circuit Court.

1. Taxation—Sale of Land for Non-payment of Tax—Regularity of Sale—Burden of Proof.—Under section 4030 of the Kentucky Statutes, which makes a deed executed by the sheriff in pursuance of a sale for taxes prima facie evidence of the regularity of the sale and of all prior proceedings and title in the person to whom the deed has been executed, the burden of proof is upon the person attacking the deed to show its invalidity.

2. Taxation—Purchase of Tax Title by Joint Tenant.—The purchase of a tax title by one joint tenant is not void; it is voidable only at the election of the other joint tenants provided the election be seasonably made.

3. Taxation—Tax Titles.—Where one joint tenant acquires a tax title to the common property, the other joint tenants may, within a reasonable time, elect to take the benefit of the tax title thus acquired by contributing their shares in the way of reimbursing the title holder for his outlay; but a failure by the other joint tenants to do so within a reasonable time will be taken as an election on their part to allow the owner of the tax title to take the benefit of his expenditure and the title he has thus acquired for his individual use and benefit.

4. Taxation—Tax Titles.—Where one joint tenant acquired a tax title to the common property and his co-tenants delayed in making their election to take the benefit of his purchase for a period of eleven years and until after there had been a great enhancement in the value of the common property, the joint tenants will be held

to have waived and abandoned their right to so elect and cannot maintain ejectment to recover their interest in the common property.

BRADBURN & BASHAM for appellants.

GILLIAM & GILLIAM and OLIVER & DIXON for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At the time of his death, which occurred many years ago, Abraham Wygal owned two tracts of land in Allen county, one containing 94 acres bought from Joseph Frost in 1853, and the other containing 47 acres bought from Jeddiah Frost in 1856. Abraham Wygal died intestate leaving his widow, Elizabeth Wygal, surviving him; and, as they had no children the land descended to. the heirs of the two brothers and four sisters of Abraham, subject to the rights of the widow, Elizabeth. As the property was then worth less than $1,000.00, no homestead or dower was set aside to the widow; but she occupied the land and paid the taxes thereon until her death in 1897.

At that time the land was worth not exceeding $200.00; and, it continued to decrease in value for want of care. It appears that no one occupied it for several years after the death of the widow. It is claimed that Tom Wygal, a brother of Abraham, listed the property for taxation in the name of the "Wygal heirs" for perhaps two years after the widow's death, but there is no satisfactory proof of that fact. However; J. C. Wygal, a son of Tom Wygal, testified that he rented out portions of the farm and collected the rents for several years after the death of the widow. In 1902 the land was listed for taxation, and the tax amounting to $3.30 not having been paid, J. C. Wygal became the purchaser of the two tracts at the sheriff's sale in August, 1903, for $5.30, the amount of the tax and the costs thereon; and, by a deed dated December 28, 1905, the sheriff conveyed the land to J. C. Wygal pursuant to the sale.

J. C. Wygal took possession of the land, claiming it as his own, and sold it to A. W. Duke on December 14, 1907, for $225.00. On May 6, 1910, Duke sold the land to the defendant Asbury Frost for $350.00, and Frost in turn executed oil leases to the defendants the White Plains Oil & Gas Company and the Ocala Oil Company, in March, 1913. The lessees have greatly improved the.

property, and oil has been produced therefrom in such large quantities that the property is now estimated to be worth from $125,000.00 to $150,000.00.

On June 29, 1916, the appellant P. T. Stamps and thirty-three other heirs at law of Abraham Wygal brought this action in ejectment against Asbury Frost, his lessees the oil companies, and twelve heirs of Abraham Wygal who would not join as plaintiffs, seeking to recover the two tracts of land, and $30,000.00, the value of the oil taken therefrom.

The answer of Frost traversed the allegations of the petition and set up the tax deed of 1905 to J. C. Wygal, his sale to Duke, and Duke's sale to Frost, and claimed to have been in the adverse possession of the land thereunder for more than 15 years before the commencement of this action; and, for the purpose of quieting his title he made his answer a counter-claim against the plaintiffs. Frost further alleged that he had put improvements upon the premises of the value of $370.00, and that the suit had been instigated by his co-tenant, J. C. Wygal, who was really interested with the plaintiffs in a recovery.

The oil companies made similar answers showing Frost's title, their leases, the improvements made thereon; and, it is clearly shown, if not conceded, that they procured the leases for valuable considerations, in good faith, and without any notice of appellants' claim, except such as may have been imputed to them by law. They claimed liens for their improvements in case of ejectment. By reason of these claims for liens the case was transferred to equity and there tried by the chancellor.

The plaintiffs contend that the sheriff's deed to J. C. Wygal passed no title to him for two reasons; (1) in making the purchase he was acting for his co-tenants as well as for himself and had in his hands, at the time, more than enough rents collected from these lands than was necessary to pay the taxes; and (2) the sheriff's deed was void because he sold both tracts when it was necessary to sell only one tract to pay the taxes.

The chancellor dismissed the petition, and the plaintiffs appeal.

The defense of ownership by adverse possession for a period of fifteen years has not been sustained by the proof, and has been practically abandoned in the briefs.

This must be so, since the earliest date at which J. C. Wygal could possibly claim an adverse holding was August, 1903, when he bought at the sheriff's tax sale, and that was less than thirteen years before this action was instituted. And, if the time should be calculated from the date of his deed in 1905 (a question not decided), the period of his adverse holding would be two years shorter.

Neither do we think the sheriff's deed was void. Section 4030 of the Kentucky Statutes reads as follows:

"In all suits and controversies involving the titles of lands claimed or held under the deed executed by the sheriff in pursuance of the sale for taxes, the deed shall be *prima facie* evidence of the regularity of the sale and of all prior proceedings and title in the person to whom the deed has been executed."

Section 3760 of the Kentucky Statutes further provides:

"Unless in a direct proceeding against himself or his sureties, no fact officially stated by an officer in respect of a matter about which he is by law required to make a statement, in writing, either in the form of a certificate, return or otherwise, shall be called in question, except upon the allegation of fraud in the party benefited thereby, or mistake on the part of the officer."

Under these sections of the statutes the burden was upon the plaintiffs to show the invalidity of the deed; otherwise, being in due form it must stand. Moseley v. Hamilton, 136 Ky. 680; Anderson v. Daugherty, 169 Ky. 308. No attempt was made by extraneous proof to rebut the *prima facie* title made by the sheriff's deed; and, the deed being in due form and otherwise sufficient it must stand as written, it being presumed that the sheriff took every preliminary step that was necessary to convey a good title.

The claim that the sheriff sold both tracts when it was necessary to sell only one tract to pay the tax, is made only in the brief and is not supported by the record. The deed purports to convey "one parcel or tract of land lying and being in magisterial district No. 1, Allen county, Ky.," containing 100 acres, and nothing appears to contradict that recital. The sheriff's deed, therefore, invested J. C. Wygal with title, and the only remaining question is, what were the rights of the respective parties under the deed? In what capacity did

he hold the land thus bought? And how are the rights of subsequent *bona fide* purchasers to be affected by plaintiffs' belated effort to enforce their rights as co-tenants with J. C. Wygal?

It is insisted J. C. Wygal held the land in trust for his co-tenants, and that the trust is emphasized by the fact that he then had in his hands more than enough rents collected from these lands than was necessary to pay the taxes. In 7 R. C. L., p. 863, the rule is stated as follows:

"The authorities are uniform in affirming the general rule that one joint tenant who acquires a tax title to the common property cannot assert such title against his co-owners except as a basis for contribution to repay him for his expenditure. His purchase simply amounts to a payment of the tax or a redemption from the sale and gives him no right except to compel contribution. He derives no exclusive benefit from the purchase since that inures to the benefit of all the co-tenants, if they elect to avail themselves thereof by reimbursing him."

But the purchase is not void; at most it is only voidable at the election of the other co-tenants to be exercised within a reasonable time.

In speaking of a purchasing co-tenant's rights to compel contribution from his co-tenant the author in 7 R. C. L. 864 gives this qualification to the general rule:

"If a long period elapses after the creation of a tax title, and the purchaser is regarded and treated by the late co-tenants as the true owner, and the latter, on their part have abandoned all claims to the property, then it may be, but not otherwise, that either of them is at liberty to disregard his former relations and to purchase the whole property for himself." See also, Blackwell on Tax Titles, sec. 571; Goralski v. Kostuski, 179 Ill. 177, 70 A. S. R. 98.

This rule has been adopted by this court in Spurlock v. Spurlock, 161 Ky. 248. In that case it was contended that a purchase of land at a commissioner's sale by a joint tenant inured to the benefit of his co-tenants, and that all the purchaser could claim was a lien for his purchase money. But in denying this claim of the co-tenants the court emphasized the fact that such a purchase was not void but merely voidable at the election of the persons interested, saying:

"It is also well settled in law that one joint tenant cannot purchase or otherwise acquire for his own benefit an outstanding title or encumbrance against the joint estate; but such sale will inure to the joint benefit of him and his co-tenants, provided the other tenants elect within a reasonable time to avail themselves of such adverse title and contribute their ratable share of the expense of acquiring it.  23 Cyc. 492, Sneed v. Atherton, 6 Dana 276, 32 Am. Dec. 70." See also, Freeman on Cotenancy and Partition, sec. 156, to the same effect.

The general rule that a co-tenant seeking to share in the benefit of a purchase of an outstanding title by his co-tenant must assert such right within a reasonable time is recognized in Brittin v. Handy, 20 Ark. 321, 73 Am. Dec. 497; Reed v. Reed, 122 Mich. 77, 80 Am. St. Rep. 541; Nalle v. Parks, 173 Mo. 616; Boskowitz v. Davis, 12 Nev. 446; Roberts v. Thorn, 25 Tex. 728, 78 Am. Dec. 552; Cedar Canyon Con. Min. Co. v. Yarwood, 27 Wash. 271, 91 Am. St. R. 841; Oliver v. Hedderly, 32 Minn. 455; Ryason v. Dunton, 164 Ind. 85; Lee v. Fox, 6 Dana 172.

In the following cases a co-tenant was held to have lost his right by a failure to assert it until after the lapse of the time parenthetically shown:  Randolph v. Vails, 180 Ala. 82, 60 So. 159 (9 years); Savage v. Bradley, 149 Ala. 169, 123 A. S. R. 30, and in Cravin v. Cravin, 68 Neb. 459 (10 years); Smith v. Washington, 10 Mo. App. 519 (3½ years); Koke v. Balkin, 73 Hun. 145 (12 years); Wilson v. Linder, 21 Idaho 576, 42 L. R. A. (N. S.) 242, Ann. Cas. 1913E 148 (7 years); Starkweather v. Jenner, 216 U. S. 524; 17 Ann. Cas. 1167 (4 years); Francis v. Million, 26 Ky. L. R. 42, 80 S. W. 486 (13 years.)

It is earnestly contended, however, that the rule of waiver does not apply in this case, because J. C. Wygal had in his possession rents derived from the common land more than sufficient to pay the tax, and consequently that the duty of first contributing to the payment of the tax was not imposed upon the other co-tenants as a condition to their electing to claim the benefit of the tax title.  But this contention makes the waiver of the right of election by the co-tenants depend solely upon the fact of their liability to contribute, when they might, in fact, have waived their right to elect although they were not indebted to J. C. Wygal by reason of his purchase. It was their long silence, lasting until after the purchaser had sold the property to *bona fide* purchasers, that con-

stituted the waiver. The basis of the rule of waiver is the delay in making the election, and applies with even greater force where conditions have materially changed and the rights of innocent purchasers have intervened, pending the delay, as in the case at bar.

Consequently it has repeatedly been held that where a co-tenant delays in making his election until after there is a change in the condition of the property or in the circumstances of the parties, he will be held to have abandoned his right. Buchanan v. King, 22 Gratt 414; Pillow v. Southwest Virginia Imp. Co., 92 Va. 144, 53 A. S. R. 804; Cecil v. Clark, 44 W. Va. 659; Stevenson v. Boyd, 153 Cal. 630, 19 L. R. A. (N. S.) 525.

In the case at bar the appellants waited nearly thirteen years after the sheriff's sale before making their claim. In the meantime J. C. Wygal had been in possession under a deed claiming the land as his own, and had sold it to a *bona fide* purchaser.

Furthermore, when J. C. Wygal bought this land at the sheriff's sale in August, 1903, it was worth little or .nothing; all of the other owners had abandoned it as worthless. It remained in this condition until the summer of 1914, a period of eleven years, when the oil companies, as lessees, began to bore wells and develop the oil therefrom. Up to that time the plaintiffs had never asserted their rights as co-tenants, but had permitted J. C. Wygal to hold and claim under his sheriff's deed of 1905, which was unquestionably hostile as to the plaintiffs. In the meantime Wygal had sold the land to Duke, and Duke had sold it to Frost, and Frost had leased to the oil companies, and they had expended large sums of money thereon, in good faith.

The failure of the plaintiffs to exercise their rights as co-tenants by avoiding the deed to J. C. Wygal, must in the face of these repeated and long continued acts of hostile ownership be treated as a waiver of their rights, and a ratification of the sale to Wygal. Any other construction would make it impossible for a purchaser to deal with the owner of land, who has the highest muniment of title, and is in actual possession thereof, claiming it as his own.

Appellants did not act with that degree of promptness which equity demands. They have slumbered for thirteen years over the question whether they should elect to

let J. C. Wygal hold on to his purchase, or require him to give the benefit of his bargain to his co-tenants.

There is no equity in appellants' claim and the chancellor properly dismissed the petition. Twin Lick Oil Co. v. Marbury, 91 U. S. 587.

. Judgment affirmed.